*Fairfield,*
July, 1848.

The Bridge-
poit Bank
*v.*
Dyer.

### THE BRIDGEPORT BANK *against* DYER.

On *Monday,* the 1st of *June,* the *Bridgeport Bank* cashed for *D,* a check, drawn in the city of *New-York,* on the *Manhattan Company,* payable to and indorsed by *D.* On *Thursday,* the 4th, it was sent, with a package of other papers, from *Bridgeport,* by the captain of the steam-boat running daily from that place to *New-York;* the steam-boat leaving *Bridgeport* about 1 o'clock, *P. M.,* and arriving in *New-York* early in the evening of the same day. The *Bank of New-York,* to which it was sent for collection, received it, and presented it for payment, on *Saturday,* the 6th, when payment was refused, and the check was protested, and due notice thereof given to *D.* It appeared, that at the time of this transaction, there was, and for years before, had been, an established usage in the *Bridgeport Bank,* not to send packages of money, checks, &c. to *New-York,* by the mail, but by the captain of the steam-boat, once a week, generally on *Thursday,* and not oftener, unless there was an unusual accumulation of paper, which did not at this time exist; and of this usage *D* was well informed. In an action brought by the *Bridgeport Bank* against *D,* as the indorser of such check, it was held, 1. that such usage was sufficient evidence of an agreement between the parties not to insist upon the usual rule of law regarding the transmission of checks; 2. that such usage was not inoperative, as being unreasonable, or as wanting any of the requisites of a good custom; 3. that there was no improper delay in the presentment of the check in *New-York,* as it was not received, by the *Bank of New-York,* until the 5th, and was presented the next day; 4. that in the computation of interest on the check, as against *D,* six *per cent.* only was to be allowed. [One judge dissenting, on the last point.]

THIS was an action of *assumpsit* against the defendant, as the indorser of a bill or check, drawn by *Aymar & Hendrickson,* on *The Manhattan Company,* dated *May* 30th 1846, payable to the defendant, or order, and by him indorsed to the plaintiffs.

The cause was tried at *Fairfield, February* term 1848, before *Ellsworth,* J.

On *Monday,* the 1st of *June* 1846, the plaintiffs, at their banking-house in *Bridgeport,* cashed the bill described in the declaration, for the defendant. On *Saturday,* the 6th of *June* 1846, it was presented, by the *Bank of New-York,* in the city of *New-York,* for payment, which was refused ; and the bill was protested, that day ; and notice of such presentment and non-payment was sent, by the next mail, to *Bridgeport,* where the defendant lived, which he received, on that day, soon after the arrival of the daily mail from *New-York.*

*Fairfield,*
July, 1848.

The Bridge-
port Bank
*v.*
Dyer.

The plaintiffs, to excuse such delay in causing the bill to be presented for payment in *New-York*, introduced evidence to prove, and claimed they had proved, that at the time they received the bill from the defendant, and for years before, it was the custom and usage of their bank, not to send packages of money, checks, and paper of that description, by the mail, but by the captain of the steam-boat, (which ran daily from *Bridgeport* to *New-York*,) once a week, generally on *Thursday*, and not oftener, unless there was an unusual accumulation of paper, which very seldom existed, and did not in fact exist, at the time referred to. The defendant, when he got this bill cashed, was well acquainted with such custom and usage of the bank; he being a merchant in the city of *Bridgeport*, and having been, during one year at least, a director of the bank; and having likewise kept, as he still did, his account and done his business there.

In *June* 1846, and before, the customary hour for the boat to leave *Bridgeport* for *New-York*, was about one o'clock, *P. M.;* and it arrived in *New-York*, in the early part of the evening following. On *Thursday*, the 4th of *June*, the plaintiffs sent this bill, with a package of other papers, by the captain of the boat, from their banking-house to the *Bank of New-York* in the city of *New-York*, as their agents, to present it, and receive payment thereof. The *Bank of New-York*, having received it, presented it for payment, as above stated, on *Saturday*, the 6th of *June*.

The defendant denied the reasonableness of such a custom or usage, and claimed, that he was not in fact acquainted with it, and prayed the court to instruct the jury, that such laches had discharged him.

The court did not so instruct the jury, but informed them, that there might be such a custom or usage; and if they were satisfied there was, at the time the bill was cashed and long before, such an established and continued custom and usage in said *Bank*, and that the defendant had knowledge of it, he was not released from his indorsement, on account of such delay, but was still liable. And as to any delay in *New-York*, the court instructed the jury, that if they were satisfied, that the bill reached the *Bank of New-York*, in the regular course of said boat, as the plaintiffs claimed, on the 5th of *June*, and it was presented for payment, as was admitted, on

*Fairfield,*
*July, 1848.*

The Bridge-
port Bank
*v.*
Dyer.

the 6th, at the *Manhattan Bank*, it was presented in season ; but if otherwise, it was not presented in season, since the *Bank of New-York* was bound to present it for payment, on the day they received it, or on the next day after.

The jury returned a verdict for the plaintiffs, for the amount of the bill or check, with interest thereon, computed at the rate of 7 *per cent. per annum ;* and the defendant moved for a new trial, for a mis-direction.

*Hawley* and *Butler,* in support of the motion, contended, 1. That the usage in this case was not such as the law will recognize as valid and binding on the parties ; it being neither certain nor reasonable. 1 *Bla. Com.* 77, 8. *Jac. L. D. tit.* Custom. 2 *Stark. Ev.* 447. The indorser could not know the extent of his liability, as he could not know when the bill would be presented. The usage was not invariable to send but once a week ; nor when once a week only, was it always on *Thursday.* It was *generally* on *Thursday ;* but any other day of the week would have been within the usage. The event on which the time of sending depended, was of the most uncertain character, *viz.* " an unusual accumulation,' produced by the accidental acts of other people in bringing paper to the bank. What would be " an unusual accumulation ?" There was no *standard* for the determination of this question. Those who dealt with the bank could never know when such a state of things existed. The usage, to be valid, must be one depending on *a certain state of facts*—not on the finding by the jury of any thing other than the existence of such usage upon a given state of facts ; otherwise, different juries might, and often would, render different verdicts upon precisely the same testimony. So that the usage, instead of being definite and certain, would be as variable as the opinions of different individuals or juries. The essence of usage is uniformity. *Levi* v. *Barnes,* 1 *Holt,* 412. (3 *E. C. L.* 145.) *Wood* v. *Wood,* 1 *Car. & Pa.* 59. (11 *E. C. L.* 312.) *Sewell* v. *Corp, Id.* 392. (11 *E. C. L.* 432.)

2. That if the usage was good, the presentment of the bill in *New-York,* was not in season. It should have been made as early as *Friday. Chitt. Bills,* 178. 282, 3. *Bayl.* 64. *Darbishire* v. *Parker,* 6 *East.* 3. *Gough* v. *Staats,* 13 *Wend.* 549.

3. That the plaintiffs were not entitled to seven *per cent* interest. The bill was negotiated, and both the parties reside, in *Connecticut.*

*Dutton* and *Ives*, contra, contended, 1. That the custom in question might be proved, and would bind the parties, as tending to show their understanding at the time. *Loring* v. *Gurney*, 5 *Pick.* 15. *Blanchard* v. *Hilliard*, 11 *Mass. R.* 85. 88. *Jones* v. *Fales*, 4 *Mass. R.* 245. 252. *Naylor* v. *Semmes*, 4 *Gill & Johns.* 274. *Yeaton* v. *Bank of Alexandria*, 5 *Cranch*, 49. 52. *Renner* v. *Bank of Columbia*, 9 *Wheat.* 585, 6. *Bank of Columbia* v. *McGruder*, 6 *Har. & Johns.* 180. *Bank of Columbia* v. *Fitzhugh*, 1 *Har. & Gill*, 239. *The Hartford Bank* v. *Stedman*, 3 *Conn. R.* 489. *Mills* v. *Bank of the United States*, 11 *Wheat.* 431. *Morgan* v. *Bank of North America*, 8 *Serg. & Rawle*, 73. 6 *Gill & Johns.* 540.

2. That the presentment was sufficient. *Sto. Prom. Notes,* 623. n. 3. *Chitt. Bills,* 416.

3. That the allowance of seven *per cent.* interest was correct. The check was drawn in *New-York*, and was to be paid there. The drawer was clearly liable to pay the interest of that state. Is the indorser's liability less extensive? *Sto. Prom. Notes*, 184. But if otherwise, it is no ground for a new trial; for the excess may be remitted; and then all will be right.

ELLSWORTH, J. This is a question of *legal diligence*, in the presenting of a check, in the city of *New-York*. Did the plaintiffs do all that the law merchant required of them?

The plaintiffs do not pretend, that they pursued the exact steps of the law; but they rely on a usage or practice of their bank, as a waiver or excuse for such omission. This practice they say, (and the jury have so found,) was known to the defendant, at the time he left the check with them; and they therefore claim, that the usual rule is not to govern in their case.

No principle of law is better settled, than that a known practice, or one belonging to a particular branch of business, is sufficient evidence of the understanding of the parties, when contracting in relation to that business, unless there be evi-

*Fairfield,*
July, 1848.

The Bridge-
port Bank
*v.*
Dyer.

dence to the contrary. It was recognized, by this court, in *Halsey* v. *Brown* & al. 3 *Day*, 346. *Barber* v. *Brace*, 3 *Conn. R.* 9. *Kilgore* & al. v. *Bulkley* & al. 14 *Conn. R.* 363., and is to be found in cases without number. *The Paragon*, 1 *Ware*, 323. *The Schooner Reeside*, 2 *Sumn.* 567. *Dwight* v. *Whitney*, 15 *Pick.* 179. *Gibson* v. *Culver*, 17 *Wend.* 305. *Renner* v. *Bank of Columbia*, 9 *Wheat.* 588. & seq. *Clark* v. *Baker*, 11 *Metc.* 186. 1 *Smith's Lead. Ca.* 18. *Bodfish* v. *Fox*, 23 *Maine* [10 *Shep.*] 90.

Had the defendant, at the time he got his check cashed, agreed with the plaintiffs, that they might retain the check, instead of forwarding it by the mail of the next day, until *Thursday*, unless, by the accumulation of paper, they should think it proper to send at an earlier day, and when they should send, it might be by the captain of the steam-boat, rather than by the mail; would not this agreement be good? Would it not be reasonable? Could the defendant be permitted to disregard it, and insist that the law had provided a different and more reasonable rule? Such, we think, is the claim of the defendant. The judge instructed the jury correctly, when he told them, that the practice was sufficient evidence of an agreement not to insist upon the usual rule of the law.

The defendant has endeavoured to show, that this practice is unreasonable, and that when tested by the rules applicable to customs, it is fatally bad. We do not agree, that this practice is bad, or exceptionable, in any point of view whatever; nor that it is obnoxious to the objections urged with such earnestness by the defendant's counsel. However; we do not think it correct to apply any such test. The special practice of this bank has but little analogy to the customs of *England*, which have been commented upon, with such ability and learning. We are not now enquiring after the law, or any custom, as a rule of law, but after the understanding and agreement of the parties. In this point of view, the cases read by the defendant's counsel, have no importance. Had the contract, as claimed by the plaintiffs, been made in explicit terms, we should have heard nothing about its want of the requisites of a good custom.

Nor was there improper delay in *New-York*. The check reached that city, on the evening of the 4th. It remained in

the hands of the captain that night, just as it might have re-
mained in the post-office, and reached the *Bank of New-York*,
the collecting agent, on the 5th. It was understood, on the
trial, that this bank, as well as the others in that place, closed
its door before night, and long before the check reached *New-
York*, on the 4th ; and further, the jury find the check reached
the *Bank of New-York*, in the regular course of said boat,
on the 5th. The captain was not an attorney for collecting
the check, but an agent to transmit it. He discharged his
duty, with the usual diligence ; and the *New-York Bank*,
whether it received the check early or late on the 5th, had
until the 6th to present it for payment.

A question has been made, in this court, although not
stated in the motion, yet admitted to have been made at the
close of the trial below, as to the rate of interest to be allowed;
whether six *per cent.*, the interest of *Connecticut*, or seven
*per cent.*, the interest of *New-York*. The plaintiffs claim,
that they were to have their money in *New-York ;* that the
contract was, by its terms, to be performed there ; that they
are entitled to the benefit of the principle, that the law of the
place where the contract is to be performed, shall govern in
the construction and extent of its obligations ; and further,
that as the plaintiffs could recover of the makers of the check
seven *per cent.*, the defendant is a guarantor of that obliga-
tion, and is, indeed, a second drawer of the check, and should
pay the plaintiffs just what they are entitled to recover on the
face of the check. On the other hand, the defendant says,
the check is not in terms payble with interest ; so that inter-
est can be recovered only by way of damages ; and that
this contract of indorsement is an original contract, made in
*Connecticut ;* and that for its breach, six *per cent.* only shall
be allowed in the computation of damages. It is not quite
certain what the practice is among merchants in this state,
in such a case ; but the court believe it is, to pay six *per cent.*
only ; and under that impression, the court adopt that rule.
My individual opinion is otherwise. From the best enquiry
I can make, I find no settled practice ; and as to principle,
the reasons already urged, lead me, on this point, to differ
from the court.

If the plaintiffs will deduct from their verdict one *per cent.*,
the judgment can stand ; but otherwise, we advise a new
trial.

*Fairfield,*
July, 1848.

The Bridge-
port Bank
*v.*
Dyer.

In this opinion (with the exception above stated,) the other Judges concurred.

New trial to be granted *nisi.*