PRESIDENT, DIRECTORS AND COMPANY OF THE PRESCOTT BANK *vs.* ROBERT B. CAVERLY.

One who puts his name on the back of a bill of exchange under that of the payee cannot limit by parol evidence his liability as indorser.

A second indorser cannot, in an action against him on the bill, dispute the legal capacity of the payee to indorse, on the ground that she was a married woman.

˙The presentment for acceptance in Boston during banking hours on Wednesday cf a bill of exchange, payable at sight, indorsed to the holder in Lowell after banking hours on the previous Saturday, and forwarded by the holder to Boston on Tuesday, is sufficient to charge the indorser.

ACTION OF CONTRACT against the second indorser of a bill of exchange, dated February 13th 1855, drawn by Adams & Co. in California on themselves in Boston, and payable at sight to the order of Adeline Hall, of Lowell, who was a married woman.

At the trial in the court of common pleas, before *Mellen*, C. J., the plaintiff's cashier testified that the defendant brought this bill to their bank about three o'clock in the afternoon of Satur‑ day, March 17th 1855, after the close of their banking hours, and when the bank was open as a savings' bank only, and there put his name on the back of the bill.

The plaintiffs were also permitted to prove, notwithstanding objection by the defendant, that it was the usual custom of this and other banks in Lowell to make up packages of such drafts with their bills of other banks, twice a week, and send them to a bank in Boston to be presented for payment; that the plain‑ tiffs received this draft as cash, and put it with their bills of other banks, and, when they made up their account on the following Monday, put it into their package for Boston, and at ten o'clock on Tuesday, pursuant to the custom, sent the package to the

Shoe and Leather Dealers' Bank in Boston, who received it during banking hours on that day, and, according to their usual custom with bills received from country banks, presented it for payment on the following day.

The defendant, against the plaintiffs' objection, was allowed to prove by the cashier of Adams & Co. at Boston, that it was a part of their business to receive funds in California and remit them to Boston to be used in the payment of drafts like that in suit; that they had invariably paid such drafts, upon presentation, until eleven o'clock on Monday, March 19th 1855, when information arrived of the failure of Adams & Co. in California; and that they should have paid this draft if it had been presented before that hour.

The defendant testified that he never had any interest in the draft in suit; that it was brought to him at his office, with the payee's name upon it, and he, at the payee's request, carried it immediately to the plaintiffs, and received the money for the payee, and returned and delivered it to her for her own use, and she took and carried it away ; that the plaintiffs' teller, who received the draft and paid out the money, knew the payee, and understood the facts ; and that the defendant knew nothing of the customs which had been attempted to be proved.

The defendant also offered to prove that, before he signed this draft, he had invariably been told, on presenting such drafts to the plaintiffs, that they received such drafts as cash, and that " a signer on such drafts was not to be held liable as an indorser, but only as guarantieing the payee's signature to be genuine, and to indicate the person to whom the money was to be paid out; and that the other banks in Lowell were accustomed to buy drafts with the same understanding. But the court rejected the evidence.

Upon this evidence, the defendant requested the judge to instruct the jury as follows : " If the defendant had no interest or title in the bill, and put his name thereon, not for the purpose of becoming an indorser, but for the purpose of guarantieing the identity of the payee, and of the genuineness of the signature on the back of the bill, and this was so understood by the plaintiffs

at the time the defendant's name was put there, then the plaintiffs cannot recover against the defendant as indorser.

" The defendant has the right to show the manner in which his name came on the bill by parol evidence ; and the jury have the right to infer what the contract was from the custom of trade, and all other evidence in the case.

" If the bill was drawn by Adams & Co. upon themselves, being bought of that firm for cash, payable at sight, it then became in effect, between indorser and indorsee, a promissory note thus payable, and a delay of two days in demanding payment would not be due diligence, if any injury resulted from such delay. And the burden of proof would be on the plaintiffs to show no such injury.

" Proving the genuineness of the signature of Adeline Hall upon such bill of exchange would not support the allegation of the declaration that said Hall duly indorsed the same to the defendant, who became thereby the lawful owner thereof; if the jury find she was a married woman, with a lawful husband alive, at the time of such indorsement.

" The evidence of the customs of the plaintiffs and other banks, as to their mode of transmission and presentment of bills, would not be evidence affecting the defendant, unless he is shown affirmatively to have known of such custom or usage, and contracted in reference thereto ; and there is no sufficient evidence of such knowledge on the part of the defendant."

The court declined to give such instructions, but did instruct the jury as follows : " It being conceded or proved that the payee of this draft indorsed the same in blank, and that the defendant indorsed his name under the signature of Adeline Hall, the payee, without any declaration, verbal or written, restricting or limiting such indorsement, and before the same was negotiated to the plaintiffs, and that the draft was immediately afterwards negotiated to the plaintiffs, and the money taken thereon by the defendant, the defendant's liability upon such indorsement is a matter of law for the decision of the court, and the defendant is liable as indorser upon said draft.

" The draft having been negotiated to the plaintiffs, the de-

fendant is bound by the customs and usages of the bank, as to the transmission and collection of the same, even though the defendant did not know the customs of the bank.

" Whether the plaintiffs used due diligence in such transmission and collection of the draft in suit, when the facts are agreed, or when there is no conflict of evidence, is a question of law, and is therefore a matter for the decision of the court.

" If the plaintiffs sent said draft to their agent at Boston, in their regular and ordinary course of business in collecting similar paper, and the same was duly presented by the plaintiffs' agents in Boston, and demand duly made and notice duly given to the defendant, the plaintiffs have used due diligence, and the defendant is responsible on said indorsement."

And thereupon the court directed the jury to return a verdict for the plaintiffs, which was done, and the defendant alleged exceptions.

*B. F. Butler & R. B. Caverly,* for the defendant.

*D. S. Richardson,* for the plaintiffs.

BIGELOW, J.   We see no reason for disturbing this verdict.

1. The defendant could not control his indorsement of the draft, by parol evidence, showing that he was not to be held liable as indorser. By placing his name on the back of the draft, before it was received by the plaintiffs, he entered into a contract with the holder, in legal effect the same as if his whole liability had been written out in full over his signature. The draft was taken by the plaintiffs in due course of business, and before its dishonor. The defendant placed his name upon it under that of the payee. This made him an indorser, with all the incidents and liabilities of that relation, and he cannot now control them by verbal testimony. *Riley* v. *Gerrish,* 9 Cush. 104. *Hoare* v. *Graham,* 3 Campb. 57. Chit. Bills, (10th Amer. ed.) 144.

2. Nor could he controvert the capacity of the payee to indorse the draft and pass the title to it to himself, and through him to the plaintiffs. By placing his own name as indorser on the draft, he admitted the legal ability and signature of every antecedent party. Byles on Bills, (6th ed.) 355. *Lambert* v *Pack,* 1 Salk. 127. *Critchlow* v. *Parry,* 2 Campb. 182.

3. The draft being payable at sight, it was necessary to present it within a reasonable time after it was received from the indorser by the plaintiffs. They were not bound to forward it immediately, but only to use reasonable diligence in transmitting it. If guilty of no unreasonable or improper delay in its presentation, then, upon its nonpayment by the drawees, they had a right tc have recourse to the defendant as indorser. Byles on Bills, 139. *Mellish* v. *Rawdon*, 9 Bing. 416, and 2 Moore & Scott, 570. *Mullick* v. *Radakissen*, 9 Moore P. C. 66. *Bridgeport Bank* v. *Dyer*, 19 Conn. 136.

Ordinarily, the question whether a presentment was within a reasonable time is a mixed question of law and fact, to be decided by the jury under proper instructions from the court. And it may vary very much, according to the particular circumstances of each case. If the facts are doubtful, or in dispute, it is the clear duty of the court to submit them to the jury. But when they are clear and uncontradicted, then it is competent for the court to determine whether the reasonable time required by law for the presentment has been exceeded or not. *Gilmore* v. *Wilbur*, 12 Pick. 124. *Holbrook* v. *Burt*, 22 Pick. 555. *Spoor* v. *Spooner*, 12 Met. 285.

In the present case, we think the ruling of the court on this point was correct; and that, on the evidence, the draft was seasonably presented for acceptance.

This view of the case renders it unnecessary to express any opinion as to the competency of the evidence of the usage of the banks m Lowell in regard to drafts like that declared on. Independently of such usage, on the undisputed facts of the case we are of opinion that the presentment of the draft fcr acceptance was seasonable. The evidence of usage was therefore immaterial. *Exceptions overruled.*