## DOYLE v. SCOTT et al.

(Court of Civil Appeals of Texas. Jan. 28, 1911.)

1. **INTOXICATING LIQUORS (§ 261*)—INJUNCTION—GROUNDS.**

The court at the suit of a private citizen and taxpayer will not enjoin one from maintaining a saloon without first applying for a license in the manner required by Acts 31st Leg. c. 17, §§ 7, 9, where he has a license which is duly posted as required by law.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 401; Dec. Dig. § 261.*]

2. **APPEAL AND ERROR (§ 1009*)—EVIDENCE—REVIEW.**

The court on appeal from an order refusing an injunction must accept as true the testimony of a party in whose favor the trial court found.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3970–3978; Dec. Dig. § 1009.*]

3. **INTOXICATING LIQUORS (§ 64*)—LICENSES—"INTERESTED IN BUSINESS."**

An owner of property who leases it for a saloon for a specified sum per month, and a part of the profits of the business, is not interested in the business within Acts 31st Leg. c. 17, § 9, requiring each person desiring a liquor license to state his name in the application, and to swear that no other person is interested in the business; the word "interested" meaning an interest in the business itself.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 64; Dec. Dig. § 64.*

For other definitions, see Words and Phrases, vol. 4, p. 3710; vol. 8, pp. 7691, 7692.]

4. **INTOXICATING LIQUORS (§ 115*)—SALOONS—"OPEN HOUSE."**

Under Acts 31st Leg. c. 17, § 15, defining an "open house" as one in which no screens obstructing the view through the place of entrance into such house are used, a saloon conducted in a wing of the entrance lobby of a hotel in plain view of the entrance thereto is conducted in an "open house."

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 125; Dec. Dig. § 115.*

For other definitions, see Words and Phrases, vol. 6, p. 4987.]

Appeal from District Court, Tarrant County; R. H. Buck, Judge.

Action by W. J. Doyle against Winfield Scott and another. From an order refusing an injunction, plaintiff appeals. Affirmed.

Lattimore, Cummings, Doyle & Bouldin, for appellant. Stephens & Miller and Capps, Cantey, Hanger & Short, for appellees.

CONNER, C. J. This is an appeal from an order of the judge of the Forty-Eighth judicial district refusing an injunction. Appellant sues as "a private citizen and property taxpayer of the city of Ft. Worth, Tarrant county, Tex.," and alleges: That F. H. Barfield and Winfield Scott "are now engaged in selling spirituous, vinous, and malt liquors at retail, and pursuing the occupation of retail liquor dealers, in the southern part of the lobby of the Worth Hotel in Ft. Worth, Tarrant county, without first applying for and obtaining a permit from the Comptroller of the state of Texas to engage in the business of selling spirituous, vinous, and malt liquors at retail in said place, and without first applying for a license to sell spirituous, vinous, and malt liquors at retail at said place to the county judge of Tarrant county, Tex., for license to engage in said business at said place, and that the said Winfield Scott and F. H. Barfield are pursuing the occupation of retail liquor dealers, and are selling spirituous, vinous, and malt liquors at retail in the south part of the lobby of the Worth Hotel without first obtaining a license, as required by law, and without first making a bond, as required by law, and without first posting up retail liquor dealers' license in said place of business as required by law. That said place of business is not an open house such as the statute requires the place of business of a retail dealer to be, and the bar of said place of business is not in view of the streets and alleys of the city of Ft. Worth, and the defendant Winfield Scott and the defendant F. H. Barfield are not authorized under the laws of Texas to engage in the selling of spirituous, vinous, and malt liquors at said place, and are not authorized to pursue the business of retail liquor dealers at said place." When the petition was presented, it was ordered filed and notices to issue to the defendants to appear at a date named to show cause why the injunction should not issue. At the time fixed, however, the writ was refused after a hearing of the evidence offered by the respective parties.

Regardless of technical questions not in-

volving the merits, the evidence is such as requires us to support the court's order. It is clear from the testimony of Barfield that at the time of the trial he had due license to engage in the business of a retail liquor dealer in the place designated in the petition, and that the same was duly posted as required by law. The fact, therefore, that Barfield in his original effort to secure license failed to make application in writing, etc., as required by sections 7 and 9 of the act regulating the sale of intoxicating liquors (Gen. Laws 1909, p. 293), becomes immaterial, inasmuch as it is a well-established rule relating to injunctions that where, as here, "the relief sought is purely preventive, a court of equity will not continue or perpetuate an injunction after the cause for which it was granted has been removed and the rights of the complainant are no longer in danger." High on Injunctions, § 41. As presented to this court but two questions in appellant's favor seem to justify discussion. The first is whether the license is invalid because of the relation of Winfield Scott to the business. The license is in the name of Barfield only, and the law (section 9, supra) requires each person, where more than one, who desires to obtain a retail liquor dealer's license to state his name in the application therefor, and to swear "that no other person or corporation is in any manner interested in or to be interested in the proposed business." Barfield testified, and this we must accept as true in view of the court's finding in his favor, "Mr. Scott wanted $200 a month for that space for the purpose of a bar. I told him I didn't think I could give it. Then he says, 'Well, you give me $150 then, and, after all expenses are paid, cut the profit in two with me.' I says, 'Yes; after drawing $100 a month for myself, I will.' And we agreed to that, and he drew up a lease for $150 a month, and Mr. Scott is to get, after all expenses are paid, a half of the net proceeds as a further rental consideration. I am to pay for the rent of the premises where that bar is, $150 a month, plus half of the net proceeds, after the expenses are paid, and my $100 a month comes out. That is the trade I made with Winfield Scott. Mr. Scott has no interest whatever in the goods I have, or in the bar or the fixtures." This state of facts does not constitute Scott a partner or "in any manner interested" in the business within the meaning of the law cited. The "interest" meant by the law means something more than the general interest every landlord has to receive the desired rentals for the use of his property. It must mean some interest in the business itself. A quotation from Parsons on Partnership may be looked to in illustration. He says: "Where the owner of property leases it for business purposes, agreeing to receive in return a proportion of the profits of the business, he receives the amount merely as rent, and is not a partner in the business.

So where one party took cattle of the other party to fatten, and his compensation was fixed at half the net proceeds over the agreed value of the cattle, this did not create a partnership between them. So where an owner of a farm lets it on half profits, the landlord and tenant certainly are not partners; for, if we suppose the tenant should go into great expense for some new mode of cultivation, and become insolvent, no one would think of calling on the landlord as liable on the tenant's contracts. So, in the very common case of shipments on half profits, it is never supposed that such a shipment makes a partnership between the shipper and shipowner; and the same principle has been applied where one advanced money to buy goods, and consigned them, to be repaid out of the goods, and to have a part of the net profits." See, also, to like effect, T. & P. Ry. v. Smissen, 31 Tex. Civ. App. 549, 73 S. W. 42, and cases cited.

The remaining question is whether the house is an "open" one within the meaning of the act cited. It is thus defined in the law itself (section 15): "An open house in the meaning of this chapter is one in which no screens or other device is used or placed inside or outside of such house or place of business for the purpose of or that will obstruct the view through the open door or place of entrance into any such house or place where intoxicating liquors are sold to be drunk on the premises." The evidence tends to show that the bar or saloon in question is conducted in the south wing of the entrance lobby of the Worth Hotel, and Barfield thus testified on the subject: "That bar is an open house. The bar is in plain view of the entrance to that bar. I have liquor cases there to show it is a bar. There is whisky in the liquor cases, and wines and so on, and brandies. * * * This bar cannot be seen from the front doors of the lobby of the hotel. I don't believe it can be seen from the middle of the lobby of the hotel. That south wing of the lobby is approximately 18 feet wide. The screen that is between the north end of that bar and the main wing of the lobby I would say is about 8 or 9 feet, something like that. That bar can be seen from the entrance of the bar. There is an entrance to the bar. It is about 7 or 8 feet between the screen and wall back east of the door. There is a space of 7 or 8 feet between the east wall of that south wing of the lobby and this screen that sets or stands just north of this bar." This evidence we think at least supports the conclusion that must be attributed to the trial court that the saloon in question is an open one. The inhibitions of the act are against obstructions to the view through the place of entrance where the intoxicating liquors are to be sold. This does not necessarily mean that the bar must in all cases be within view of an outside entrance to the building. Where, as here, the house includes many rooms, noth-

ing in the act or in the laws relating to contracts makes it unlawful for the owner to lease an inside room for the purposes of a saloon, and, should he do so, the lessee would comply with the requirement under consideration by keeping the view through the place of entrance into such inner room or place unobstructed.

We conclude that the judgment must be affirmed.