# THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY *vs.* THE FIRST NATIONAL BANK OF BRIDGEPORT ET ALS. (GOODHUE MILL COMPANY)

Third Judicial District, Bridgeport, April Term, 1926.

WHEELER, C. J., CURTIS, MALTBIE, HAINES and HINMAN, Js.

A finding will not be corrected by the addition of facts which are not admitted or undisputed, or are immaterial, or are already properly set forth as conclusions.

In the absence of specific instructions to the contrary, the duty of a bank which receives a bill of exchange for presentment and acceptance is as follows: if the bill is payable at sight or after an uncertain event, as after sight or demand, it must be presented for acceptance; but if it is payable at a certain time after a fixed day, such presentment, though usually made in order that the acceptor's liability may be assured, is unnecessary unless an express direction to present is given to the payee or holder or unless the bill is placed in the hands of an agent to negotiate.

Presentment for acceptance, when required, must be made by the bank within a reasonable time after the bill is received.

When commercial paper is forwarded from one bank to another for presentment, acceptance and collection, the receiving bank is governed, unless otherwise specially instructed, by the laws of the place where it is located and by such of the pertinent customs and usages therein prevailing as are not unlawful, unreasonable, contrary to the express agreement of parties, or alterative of the intrinsic character of the transaction.

A milling company in Minnesota shipped a carload of flour to a grain dealer in Bridgeport and at the same time, through its Minnesota bank, forwarded to a Bridgeport bank the bill of lading and a draft upon the consignee "payable thirty days after arrival," together with written instructions to "surrender documents upon drawee's acceptance of draft payable thirty days after arrival of car." The Bridgeport bank received these papers on November 10th and gave immediate notice thereof to the consignee, which, two days later, accepted the draft. Thereupon, the bank, making no effort to investigate the arrival of the car which, in fact, did not reach Bridgeport until November 27th, but following in that respect a custom among the banks of that city to treat the acceptance of such a draft as

establishing the arrival of the car and as fixing the due date of the instrument, immediately released the bill of lading to the consignee and, on the same day, took back an assignment of it as security for a loan which was never paid. On November 22d, bankruptcy proceedings were instituted against the consignee and shortly after that date and before the bank had obtained possession of the car, the shipper gave to the carrier a notice of stoppage *in transitu.* In the present action of interpleader brought by the carrier to determine whether the bank or the shipper was entitled to the flour, the shipper claimed that the bank had violated its instructions concerning the surrender of the bill of lading. *Held* that this claim was without merit, since the custom and usage relied upon by the bank were neither inconsistent with the letter of its instructions nor subversive of the purpose for which they were given, and since it was apparent from the finding as to the course of dealing between the parties that the bank had acted in good faith which, and not whether it had acted negligently or not, was the determinative question under §§ 4652 and 4665 of the General Statutes.

The trial court admitted evidence to prove the custom in the flour trade as to the meaning of drafts such as the one in question. *Held* that, although the evidence was immaterial, its admission was harmless.

Argued April 21st—decided July 30th, 1926.

ACTION of interpleader to determine the title to a carload of flour, in the possession of the plaintiff, brought to the Superior Court in Fairfield County; the court, *Banks, J.,* rendered an interlocutory judgment of interpleader, after which the defendants filed their respective claims and the issues were tried to the court, *Booth, J.;* judgment rendered for the defendant Goodhue Mill Company, from which the defendant The First National Bank of Bridgeport appealed, and the Goodhue Mill Company also appealed from rulings on its motion to correct the finding. *Error and judgment directed for The First National Bank of Bridgeport.*

On November 6th, 1923, the Goodhue Mill Company of Minneapolis, Minnesota, a flour manufacturer, shipped a carload of flour to Bridgeport, consigned to

the National Grain Corporation, wholesale grain dealers located in Bridgeport, and on the same day drew a draft upon the Grain Corporation for $1,-510.35, the purchase price of the flour. The draft was made payable "thirty days after arrival" and contained, on another part of the draft, "Car 705165 Mil." Attached to the draft was a standard negotiable bill of lading. The Mill Company, through The First National Bank of Minneapolis, forwarded the draft and bill of lading to The First National Bank of Bridgeport, accompanied by instructions, both from the Mill Company and the Minneapolis bank, to "Surrender documents upon drawee's acceptance of draft payable 30 days after arrival of car." These papers were received by the Bridgeport bank on November 10th, 1923, and the bank immediately notified the Grain Corporation that it held them.

On November 12th the Grain Corporation accepted the draft and the bank surrendered to it the bill of lading. On the same day the bank loaned the Grain Corporation $3,600, and as part security for the note received an assignment of the bill of lading. The bank still holds the note, unpaid, and the bill of lading as security. At the time the draft was accepted the Bridgeport bank made no effort to ascertain whether the car had arrived in Bridgeport, and it did not actually arrive until November 27th.

Bankruptcy proceedings were instituted against the Grain Corporation November 22d, 1923, and it was subsequently adjudicated bankrupt. Between November 22d and the adjudication, and before demand by the Bridgeport bank for the car, the Mill Company notified the railroad company to stop delivery, claiming a right of stoppage *in transitu*.

Other material facts found by the trial court will be stated in the opinion. Upon the facts found the

court held that the Bridgeport bank owed to the Mill Company the duty to ascertain that the car had arrived before permitting acceptance of the draft; that the custom among banks in Bridgeport of permitting acceptance of such drafts at any time after arrival of draft was inconsistent with the specific instructions; that by reason of permitting such acceptance and taking an assignment of the bill of lading the bank was not a bona fide holder of the bill of lading; that the Mill Company had the right of stoppage *in transitu* and that the flour is its property.

*William H. Comley,* for the appellant (the defendant The First National Bank of Bridgeport).

*Joseph G. Shapiro,* with whom, on the brief, were *Harry Allison Goldstein* and *Charles S. Brody,* for the appellant (the defendant Goodhue Mill Company).

HINMAN, J.  The appeal of the Mill Company from the refusal of the trial court to add certain paragraphs to the finding is without merit; the matters referred to are either already properly set forth as conclusions, are not admitted or undisputed, or are immaterial. The finding as to custom, sought to be stricken out, is, as will hereafter appear, both relevant and material.

The first question raised by the bank's appeal relates to the correctness of the court's conclusion as to the duty of the bank in the premises.  The duty of a bank, receiving a bill of exchange for presentment and acceptance, in the absence of specific instructions to the contrary, may be thus stated:  Bills payable at sight or after an uncertain event, as after sight or demand, must be presented for acceptance without unreasonable delay.  Bills payable at a certain time after a fixed day need no presentment for acceptance; but when payable at a future day it is usual to present for ac-

ceptance with diligence, because, if accepted, the acceptor's liability is assured. And if there is an express direction to present given to the payee or holder of a bill payable at a fixed time, or if it is put into the hands of an agent to negotiate, it must be presented for acceptance. Presentment for acceptance must be made within a reasonable time after the bill is received, and must, of course, be made previous to the day on which the paper is due or it is merged in presentment for payment. 1 Morse on Banks & Banking (5th Ed.) § 258; General Statutes, §§ 4501, 4502.

The above-quoted instruction accompanying the draft in question was, unmistakably, a direction to present the draft for acceptance; it contained no express direction varying or controlling the general duty of the bank as to the time of making such presentment. If, as the trial court held, it was incumbent upon the bank to delay presentment for acceptance until it had ascertained that the car had arrived, instead of presenting it, as it did, within a reasonable time after receiving it, and as, under the general rule above stated, it was bound to do or, at least, justified in doing, the reason must be found in some necessary implication from the instructions, the draft, or the general nature of the transaction.

It is suggested that such reason is afforded because the parties intended, and the drawer was entitled to, a negotiable instrument, and that to create negotiability the draft must be payable at a fixed or determinable future time, and it is claimed that, in order to determine the maturity of the draft, the date of acceptance must coincide with the date of arrival of the car. But justification of the bank in permitting acceptance as and when it did is not dependent upon a determination that, under general rules, the draft, whenever accepted, was negotiable as being payable at

a determinable future time. The trial court has found a custom in the banking business in Bridgeport, as to drafts payable a specified time after arrival of car, to treat the acceptance of the draft as proof of the arrival of the car, without ascertainment by the bank as to whether the car had actually arrived, and that such acceptance established the due date of the draft as the specified time from the date of acceptance. This custom was followed as to the draft in question and its existence is confirmed by the further finding that five prior similar drafts, dated between October 2d and November 3d, drawn by the Goodhue Company and forwarded to this Bridgeport bank under like instructions, had been accepted by the Grain Corporation, in each instance before arrival of the car, and were honored and paid upon the maturity based on date of acceptance, to wit, thirty days after acceptance instead of thirty days after actual arrival of car. The court has, notwithstanding, also found that neither the Goodhue Company nor the Minneapolis bank were aware that the Bridgeport bank permitted acceptance before actual arrival of cars, until after the bankruptcy of the Grain Corporation, and the Mill Company claims that, for this reason, the custom is not binding upon it and will not avail to justify the bank in acting in accordance therewith.

A bank is governed, in all matters concerning the presentment, acceptance, and collection of paper, by the laws and customs which prevail in the place of its own location. If the paper has been transmitted from a distant place, where the laws and customs are different, the transmitting party, if he wishes these to be conformed to, must send special instructions to that effect, and in the absence of express directions the collecting bank is not bound to inquire into the laws or usages of any place other than its own. The under-

standing, which is assumed to be mutual and to enter into the contract of the parties, is that the bank shall perform the various acts embraced in the business in accordance with the local laws, rules and habitual course of dealing, providing that such usage is not illegal. The assent of all concerned to the pursuance of this course then becomes an implication of law by which all the parties are equally bound. 1 Morse on Banks & Banking (5th Ed.) § 220; *Skiff* v. *Stoddard,* 63 Conn. 198, 219, 26 Atl. 874, 28 id. 104; *Bridgeport Bank* v. *Dyer,* 19 Conn. 136, 139. "The usage of a bank, known to persons dealing with it, binds them. The general usage of all or a majority of the banks in a place, town, city, or county, is held to be known to all in the particular community, and all who, though dwelling elsewhere, enter into transactions which they must be presumed, as men of ordinary foresight, to know will involve a dealing with or through the banks of that place." 1 Morse on Banks & Banking (5th ed.) § 9, p. 26, § 221; *Bank of Washington* v. *Triplett & Neale,* 26 U. S. (1 Pet.) 25, 7 L. Ed. 37; *Davis* v. *First National Bank,* 118 Cal. 600, 50 Pac. 666; *Jefferson County Savings Bank* v. *Commercial National Bank,* 98 Tenn. 337, 39 S. W. 338; *Sahlien* v. *Bank of Lonoke,* 90 Tenn. 221, 16 S. W. 373; *First National Bank of Memphis* v. *First National Bank of Clarendon,* 63 Tex. Civ. App. 469, 134 S. W. 830; and numerous other cases cited under § 221 of Morse on Banks & Banking, Vol. 1 (5th Ed.) note 2. In *Savings Bank* v. *National Bank,* 98 Tenn. 337, 340, 39 S.W. 338, the rule is concisely stated, as follows: "A principal who selects a bank as his collecting agent, thus availing himself of the facilities which it holds out, in the absence of special directions is bound by any reasonable usage prevailing and established among the banks at the place where the

collection is made, without regard to his knowledge or want of knowledge of its existence."

One reason for the rule, as stated in 1 Morse on Banks & Banking (5th Ed.) § 221, is that the fact that one deals with a bank without taking the trouble to inquire as to its system will raise the implication that he either already knows and is satisfied with that system or voluntarily trusts to the wisdom of the bank at his own risk as to its sufficiency; the bank is not bound to thrust upon him a statement of its intended course. Another consideration is the practical necessity of adhering to the uniform methods of transacting business as established by local usage unless otherwise specifically instructed. As held in *Skiff* v. *Stoddard, supra,* p. 219, the custom must not be "unlawful, unreasonable, contrary to the express agreement of the parties, nor such as to change the intrinsic character of the undertaking," but we do not see that the custom here under consideration manifests any of these faults. The fundamental and controlling characteristic evinced by the provision in the draft for payment thirty days after arrival was to pass possession of the goods to the buyer before payment and to grant it credit, to the extent indicated, beyond the time of such change of possession. The vendee could, of course, obtain the full extent of this credit by deferring acceptance until arrival, but there is no unreason in a custom permitting it to waive this right, treat acceptance as an admission of arrival and the date of such acceptance as determining maturity, and, in return for this concession, obtain the bill of lading—as might often be desirable for the purposes of resale and perhaps, as incident thereto, diversion of the shipment to another point.

Neither can we agree with the conclusions, attacked by other reasons of appeal, that the custom was inconsistent with the specific instructions given, or that it

changed the intrinsic character of the transaction. The instructions were to "Surrender documents upon drawee's acceptance of draft payable 30 days after arrival of car." The acceptance of the draft is indicated as the condition precedent to surrender of the bill of lading, and this direction was literally complied with. To make the custom inconsistent with the instructions and the act of the bank a violation of them, the language must be construed as if it directed surrender of the bill of lading "only after arrival of the car and acceptance of draft"; the direction given does not express, nor do we think fairly import, such a meaning. It is fair to assume that if, as the shipper now claims, preservation of the right of stoppage *in transitu* until arrival of the car was the paramount purpose of the instructions, that intent would have been made clear by appropriate language; on the other hand, the expressed willingness of the shipper to extend payment for thirty days after arrival of the car, affords no intimation of doubt as to the buyer's solvency and desire to preserve the right of stoppage *in transitu,* but quite the contrary.

Furthermore, this is not a case where recovery is sought upon the ground of alleged negligent performance of the shipper's business,—the question here relates only to the bank's good faith or lack of it. A thing is done in good faith, within the meaning of our Bills of Lading Act, "when it is in fact done honestly, whether it be done negligently or not." General Statutes, §§ 4665, 4652. In order to justify the conclusion that the bank was not a holder in good faith of the bill of lading, the subordinate facts must establish that in permitting acceptance of the draft, thereupon surrendering the bill of lading, and subsequently taking an assignment of it, the bank acted with notice of facts making the transaction wrongful. The finding is that

the bank received the bill of lading in the regular course of business and without actual notice of any other claim of ownership, or right, title, or interest therein; that notes of the Grain Corporation held by the bank had been and were then being paid at or before maturity; that in each instance of acceptance of this and prior drafts, accepted before arrival of car, the forwarding bank was immediately notified of the acceptance and of the due date, expressed to be thirty days after acceptance. These due dates, so reported, might well be presumed to have indicated to the shipper, in the light of its knowledge of the time required for transit of a car, that the drafts were being accepted in advance of actual arrival of the car. A finding of lack of honesty on the part of the bank is not justified and it follows that the conclusion that it was not a bona fide holder cannot stand. The legitimate conclusion from the facts found and the principles above stated is that the Bridgeport Bank is a bona fide holder of the bill of lading and that the flour is its property.

The evidence of an official of the Mill Company as to the custom in the flour trade as to the meaning of a thirty-days-after-arrival draft was immaterial, but its admission was harmless.

There is error, the judgment is set aside, the cause is remanded, and the Superior Court directed to enter judgment that the title to the carload of flour is in the defendant The First National Bank of Bridgeport.

In this opinion the other judges concurred.