### Arthur Klein *vs.* H. E. Munson.

Third Judicial District, New Haven, June Term, 1930.

Wheeler, C. J., Maltbie, Haines, Hinman and Banks, Js.

Argued June 11th—decided July 9th, 1930.

*David M. Reilly*, with whom, on the brief, was *Samuel M. Silver*, for the appellant (plaintiff).

*Walter J. Walsh*, with whom was *John J. Sullivan, Jr.*, for the appellee (defendant).

WHEELER, C. J.   The decision turns upon a comparatively simple point.   What was the contract made by the plaintiff with the defendant, a stockbroker, in the sale to the plaintiff of the two hundred shares of stock ordered by him from the defendant at the solicitation of defendant's agent?

The order of the plaintiff was that payment for and delivery of the stock was to be by "sight draft against payment" upon delivery of the stock to the Mechanics Bank in New Haven within a reasonable time.   A sight draft is a bill of exchange for the immediate collection of money.   "Against payment" meant for collection. The agreement called for the delivery by the defendant

to the Mechanics Bank of this stock, sight draft attached to the same, for collection; it was the duty of the bank to collect the draft from the plaintiff drawee and upon his payment of the draft to deliver to him the certificates for this stock. In the collection of this draft and the delivery of the stock the bank would be acting as the agent of the drawer of the draft, the defendant. The trial court was mistaken in holding that the bank would be the agent of the plaintiff throughout this transaction. *Gleason* v. *Thayer*, 87 Conn. 248, 250, 87 Atl. 790; *Blue Ribbon Garage* v. *Baldwin*, 91 Conn. 674, 679, 101 Atl. 83.

The defendant was bound to deliver the stock to the bank as required by the contract. General Statutes, §§ 4707, 4709. Since the defendant by the contract agreed to designate the bank as its agent for collection of the draft, the custom of the bank in making collection of drafts became a necessary part of its contract. *New York, N. H. & H. R. Co.* v. *First National Bank,* 105 Conn. 33, 38-40, 134 Atl. 223-225. Its custom was to notify the drawee that the bank held for collection a draft drawn upon him. Such notification would give the drawee the opportunity to examine the draft, verify its amount and inspect the certificates of stock to see if they were in due form and represented the correct number of shares before paying the draft. The plaintiff was entitled under his contract to receive such a notice and to have such a presentment made to him before he paid the draft. In the absence of a specific provision controlling the matter the drawee of a draft payable at sight is entitled to notice and demand. 2 Randolph on Commercial Paper (2d Ed.) § 1070.

The defendant stockbroker must be presumed to have known the meaning of the contract he had made with the plaintiff; that he did understand it is apparent from his two written orders to his brokers, Wins-

low, Day and Stoddard, from whom he purchased this stock, which recite in each order that they were to "deliver to order of Mechanics Bank account of Arthur Klein draft attached" at a stated price per share one hundred shares of a designated stock. Instead of carrying out these written instructions these brokers on two occasions sent certificates for one hundred shares of this stock to the bank for the plaintiff's account and attached to these a delivery slip, receipt, and a bill or invoice. The officer of the bank to whom the messenger presented these refused to accept the stock and pay for it as the plaintiff had not so instructed the bank to do. The plaintiff did not know that the defendant had purchased this stock from these brokers nor did he know that they had attempted to make delivery of it to the bank. The failure of the brokers to comply with the instructions of their customer, the defendant, in making delivery of the stock was a manifest breach of their duty under their contract with the defendant and as a consequence of their failure the defendant breached his contract with the plaintiff. Had the brokers carried out the defendant's instructions the bank would in due course have given the plaintiff notice that it held the drafts for collection attached to the stock for delivery upon payment of the drafts. The delivery of the stock with sight draft attached was a vital part of this contract for it would have given the plaintiff the right to notice from the bank and the opportunity to have paid the drafts and received the certificates of stock in return. It was not the custom of the bank on presentment of stock with a bill or statement to notify the drawee, in consequence the plaintiff received no notice and knew nothing of the presentment at the bank of this bill or invoice and stock.

The trial court interpreted this contract "sight draft

against payment" to mean that the plaintiff "undertook and was bound to have money sufficient on hand with his agent, the bank, to meet the draft . . . for the stock when it was presented." This was a mistaken view of the meaning of this contract and in conflict with banking usage. The trial court's view was no doubt affected by its erroneous assumption that the bank in the collection of the draft would be the agent of the plaintiff. Its further holding that plaintiff's loss, if any, "resulted from his own failure to have funds with his agent to pay for the stock" imposed a duty upon the plaintiff which the law did not impose upon him. He would have been under no legal obligation to pay drafts or have funds at the bank to pay them until he had received notice from the bank that the drafts were in its hands for collection. For any loss resulting to the plaintiff from the failure of the brokers to make deliveries to the bank in accordance with their written instructions the defendant must reimburse the plaintiff.

We omit, with two exceptions, consideration of the claimed corrections of the finding. The finding that "the plaintiff was not ready, able and willing to pay for said stock within a reasonable time after the giving of said orders," when read in connection with the rest of the finding can mean, as we read the finding as an entirety, no more than that the plaintiff offered no evidence upon this point. He was under no legal obligation to do so. It is however to be noted that as soon as plaintiff learned delivery of the stock had been attempted to be made through these brokers he made demand on them for the stock and offered to pay for it the original order price but they refused to make delivery to him.

It is also found that plaintiff expected that when the stock was delivered at the bank it would notify him

whereupon he expected to arrange with the bank to pay the draft and take up the stock. "This expectation," the court further finds, "plaintiff concealed from defendant." The plaintiff was not required to inform defendant at the time he gave the order, which defendant's agent solicited from him, of his expectation that he would receive notice from the bank and would then arrange for the payment of the drafts. He was dealing with a broker whom he was entitled to presume knew the meaning and usage of the terms used in this contract. There was no concealment in not informing the plaintiff's broker's agent that the order gave to the plaintiff the same right to notice as all sight drafts presented to the bank for collection gave to the drawees of the drafts.

Some of the conclusions which appear in the body of the finding as facts found are not in harmony with the agreement; the latter must control the decision. The agreement must prevail over "inconsistent or contradictory statements in the finding." *Torkomian* v. *Russell*, 90 Conn. 481, 484, 97 Atl. 760.

The plaintiff is entitled to a judgment for the difference between the contract price and the market price at the time of the refusal to deliver, General Statutes, § 4733, that is, to a judgment for the sum of $675 on the first count and $400 on the second count with interest.

There is error, the judgment is reversed and the City Court of New Haven directed to enter its judgment for the plaintiff for $1075 with interest from September 20th, 1929.

In this opinion the other judges concurred.