LAHEY v. TRACHMAN.

In re JAYBAR REALTY CORPORATION.

No. 327.

Circuit Court of Appeals, Second Circuit.
Aug. 19, 1942.

Edward M. Sills, of New York City, for appellant.

Sydney Cutler, of New York City (Julius Cutler, of New York City, of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This, in form, is a three-sided dispute among a trustee in bankruptcy, a vendor of real estate, and the City of New York. At issue is the right to a refund of part of a sewer assessment against real estate sold by appellant, Lahey, to the bankrupt, Jaybar Realty Corp. The trustee sought to obtain the refund by summary proceedings against the city, and Lahey, who was given notice, appeared specially to contest summary jurisdiction of the bankruptcy court. Before the referee he lost on this issue, as well as on the merits. His petition for review was also unsuccessful, and he appeals here. The city is interested only in making refund to the proper person, and does not contest the order.

So far as is relevant, the facts are these: In October, 1936, Lahey contracted to sell real estate to the bankrupt for $21,125. The purchase price was computed as $3,000 in cash and a mortgage in the sum of $3,585 computed by subtracting unpaid taxes and assessments from $18,125, which in turn was the difference between the purchase price and the cash payment.[1] Part of the unpaid taxes and assessments was the sum of $5,760 due on the Sheepshead Bay sewer assessment. In May, 1937, the United Title and Mortgage Guaranty Company paid the assessment on behalf of the bankrupt. Later that same year the city passed Local Law No. 27, 1937, p. 273, refunding 30 per cent to the "persons who have paid or caused to be paid" the assessment. It is this refund that the trustee seeks by the turnover order in question.

Examining the terms of the local law, it would seem clear that the person who "paid" the assessment was the title company. Likewise the person who "caused to be paid" would on the surface appear to be the bankrupt. If this is correct, whatever right Lahey has to the fund must come from some agreement between the parties, and not from the local law.

Whether or not this is the correct interpretation of the law is the substantial issue in the case, and an affirmative answer will determine both the question of summary jurisdiction and the merits. For if the bankrupt is the person to whom the city should make payment, then the turnover order is proper. Appellant has sufficient interest to be heard to oppose, and hence he was properly served with notice to appear. And, as hereafter indicated, he may properly have claims to make against the bankrupt estate. But that does not affect the validity of the turnover order, once this construction of the statute is established. See L. Hand, J., in Re Hoey, Tilden & Co., D.C.S.D.N.Y., 292 F. 269, 272. We turn, therefore, to a consideration of the opposing arguments as to the meaning of the law.

Appellant's argument that he was the person who caused the assessment to be paid rests on the contention that he absorbed the assessment by reducing the purchase price by that sum. If this were true, however, we would have to assume that the city was required to trace the chain of title as to allowances for unpaid assessments until it found who had borne the economic burden. This can hardly be the meaning of the local law. The immediate obligation is to the person who paid the sum. In re Calamus Ave., Sup., 28 N.Y.S.2d 146, 147. In that case, the court indicated that in a summary action only the person who "paid the assessments to the City in the first instance" could recover; others were left to a plenary action. That, it seems to us, makes it clear that the rights as between parties to the refund are of no interest to the city—that is, are not a problem of interpreting the local law.

Nor do we find that the cases relied on by appellant require a different conclusion. In Matter of East 46th and East 49th Streets, Sup.Ct., Spec. T., Kings County, N.Y.L.J., Nov. 16, 1940, p. 1589, the court said that "conflicting claims" were made to a refund. And in In re World's Fair Land

---

[1] There were some minor adjustments made at the closing which make the sums slightly inaccurate. These discrepancies are not material to the issues before us.

Development Corporation, Sup.Ct., Spec. T., Kings County, N.Y.L.J., June 17, 1939, p. 2818, the court, through the same judge, Mr. Justice Lockwood, spoke of the case as a "controversy between two claimants for the refund." [2] Though each case refers to the statute and its purpose, the language is hardly decisive here, because the question of who was the city's obligee was not vital. Indeed, it is only in a situation like the one before us that it becomes important to distinguish between the person entitled to receive a check from the city and the person equitably entitled to the refund. If the city is immediately obligated to the bankrupt, the trustee can order a turnover. Any rights appellant has would therefore take the form of a claim either against the estate or against the trustee in bankruptcy as constructive trustee for appellant's benefit. And such rights might depend upon some equity deduced either from the statutory intent or from a contract, express or implied, between the parties to the realty transfer.

■■ It follows, therefore, that the city was properly directed to pay the refund to the bankruptcy trustee, and that upon making such payment it will be discharged from all further obligation in the premises. The order of the bankruptcy court, however, went further and found appellant's claim without any foundation in law or fact. Since appellant was properly before the court, this constitutes a final adjudication that he has no equity even against the bankrupt estate. We all agree with this conclusion also, although we reach it by somewhat divergent routes. My brothers incline to the view that under the New York authorities the person legally entitled to the refund may be a constructive trustee for the benefit of the person who actually suffered the loss of the assessment. But they hold that rule inapplicable here because appellant has failed to show that the loss fell upon him, since it appears by the express terms of his deed of purchase that he originally acquired the premises already subject to the assessment, and therefore presumably at a reduced price. With deference, I hesitate to accept this conclusion without further investigation below of the facts. It appears that appellant took his deed of purchase in lieu of foreclosing a mortgage of $21,000 previously held by him on the premises. The amount of the mortgage is so close to the sale price set by appellant before he had deducted the unpaid assessments as to suggest that perhaps he did suffer the loss. But I do not regard that fact, even if true, as controlling, since, as I read the authorities, unless there is an express or implied agreement to the contrary, a vendor of realty may not later recover the amount of a lien on the premises which has been paid or satisfied by someone other than the vendee, even though the original purchase price was reduced by the amount of the lien.[3] As there was no evidence here tending to show any such agreement, I arrive at the same result as do my brothers.

Affirmed.

---

[2] Appellant also cites Lahey v. Department of Finance of City of New York, Sup.Ct., Spec. T., Kings County, N.Y.L. J., Feb. 13, 1942, p. 674, where appellant sought to obtain the refund for himself. Although the court, again through Mr. Justice Lockwood, said that appellant was entitled to the refund, the East 46th Street and World's Fair cases were relied on and there was no other discussion of the problem. This case, therefore, stands or falls with the two cases on which it is built.

[3] Ackerman v. Progress Improvement Co., Sup.Ct., Spec. T., Kings County, N.Y.L.J., July 21, 1938, p. 187; James v. Schmidt, 2 N.Y.S. 649, 18 N.Y.St.Rep. 369; Allez v. Morales, 111 Misc. 139, 180 N.Y.S. 915, 917; Parker-Washington Co. v. Kansas City, Mo., 8 Cir., 40 F.2d 232, 234, and cases cited. Mr. Justice Lockwood's decisions cited above may perhaps look the other way, but seem also explicable as constructions of the contractual relationships of the parties.