FRANK C. CALAMITA *v.* THE TRADESMENS NATIONAL BANK

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued December 10, 1948—decided February 1, 1949

*Gerald W. Brownstein* and *James F. Rosen,* with whom, on the brief, was *John A. Mele,* for the plaintiff.

*Joseph M. Brandon,* with whom were *Bernard Insler* and, on the brief, *David E. FitzGerald, Jr.,* for the defendant.

*Reese H. Harris, Jr.,* filed a brief as amicus curiae.

MALTBIE, C. J.  The complaint in this action alleged that the plaintiff, a depositor having a checking account in the defendant bank, issued a check against it, that five days later he gave the bank written instructions not to pay the check and that the bank negligently paid it and has refused to make restitution. The bank, in its answer, admitted the allegations as to the issuance of the check, the written instructions to stop payment and the payment of the check, but denied that it was negligent; as a special defense it alleged that the check was paid through inadvertence, accident or mistake, and, as exonerating it from liability, it pleaded the terms of the notice to stop payment. This began: "The undersigned hereby requests" the defendant "to stop payment of a check drawn by the undersigned" and described by amount, number, date and name of the payee; then, in a separate paragraph and, as appears in a copy used in argument before us, in much smaller type, the notice proceeded: "The undersigned agrees to hold the above Bank harmless and to indemnify it against any loss, expenses and costs resulting from nonpayment of the said check.  Should the check be paid through inadvertence, accident or oversight, it is expressly agreed that the Bank will in no way be held responsible.  The Bank receives this request upon the express condition that it shall not be in any way liable for its acts should the check be paid by it in the course of its business."  The plaintiff demurred to the special defense, in effect on the ground that the stipulations in the request were insufficient in

law to free the defendant from liability. Thereupon the action was reserved to us to decide the question so presented, with a stipulation that our decision should be accepted as the final determination of the case.

In a very recent note, 1 A. L. R. 2d 1155, there is a collection of cases dealing with the effect and validity of such provisions in a stop-payment request or order. They show a diversity of opinion upon the question. We shall discuss the principal ones below, but we now point out that they are ample authority for the proposition that it is inherent in the relationship between a depositor and his bank that he has a right to stop payment upon a check he has issued and that, unless the liability of the bank is in some way validly qualified, it must respond to him in damages if, in disregard of a stop request or order, it pays the check, at least if it is negligent in so doing. See 6 Zollman, Banks & Banking, §§ 3701, 3710; *Union & New Haven Trust Co.* v. *Thompson,* 134 Conn. 607, 608, 59 A. 2d 727.

In *Tremont Trust Co.* v. *Burack,* 235 Mass. 398, 402, 126 N. E. 782, the court briefly upheld provisions similar to those before us against the claim that they were opposed to public policy. In *Hodnick* v. *Fidelity Trust Co.,* 96 Ind. App. 342, 183 N. E. 488, the court (p. 347) discussed at some length the question whether such stipulations were against public policy and held that they were not and then (p. 350) made the categorical statement that they were based on a sufficient consideration. In *Gaita* v. *Windsor Bank,* 251 N. Y. 152, 155, 167 N. E. 203, the court construed a request which was in terms much like the one before us as a qualified or limited notice, stating that if the drawer of the check desired to hold the bank to its common-law liability the notice should be positive and unqualified. In *Hiroshima* v. *Bank of Italy,* 78 Cal. App. 362, 248 P. 947, it appeared (p. 373) that the

drawer of the check could not read the English language, in which the stipulations were written, that they were not read to him and that he was told that if he wanted payment stopped he must sign the order; and the court held that the case was thereby brought within a provision of the California code which entitled him to recover; the court then discussed (p. 374) the question whether the stipulations were against public policy and held that, under another provision of the code, they were. The latter part of this opinion was followed and applied in *Grisinger* v. *Golden State Bank*, 92 Cal. App. 443, 445, 269 P. 425. Finally, in the recent and very well considered case of *Speroff* v. *First Central Trust Co.*, 149 Ohio St. 415, 79 N. E. 2d 119, stipulations in a stop-payment request quite similar to those before us were held to be without supporting consideration, against public policy and ineffective to relieve the bank from liability.

The opinions in these cases suggest three questions which may arise out of such a situation as that before us. Was the stop-payment order in this case a limited or qualified request or was it an unqualified notice to which it was attempted to annex certain contractual obligations? If the latter was true, were the stipulations without sufficient consideration to support them and were they against public policy?

In its introductory argument the defendant stresses the fact that, by reason of the size of many modern banks, the great number of employees they have and the complications resulting from the many accounts of depositors which they handle, it is difficult for them to be sure that stop orders will be honored, and the defendant contends that a greater leniency should be extended to them as regards the effect to be given to such stipulations as those before us. Certainly it is a novel proposition of law that because a bank chooses to as-

sume the proportions of a large business the usual principles of law should not be applied to it; and the contention would lead logically to the impossible conclusion that one law should be applied to small banks and another to large ones. We are unable to see any sound reason why, as between a depositor who, having issued a check, for some reason desires to stop payment upon it and the bank to which he has intrusted his account, the latter should occupy a preferred position. As stated in *Cincinnati, H. & D. R. Co.* v. *Metropolitan National Bank,* 54 Ohio St. 60, 71, 42 N. E. 700: "The relations of bank and general depositor is simply the ordinary one of debtor and creditor, not of agent and principal, or trustee and cestui que trust. The bank agrees with its depositor to receive his deposits, to account with him for the amount, to repay to him on demand, and to honor his checks to the amount of his credit when the checks are presented; and for any breach of that agreement the bank is liable to an action by him. . . . The bank's agreement with the depositor involves or implies no agreement with the holder of a check. The giving of a check is not an assignment of so much of the creditor's claim; it passes no title, legal or equitable, to the holder in the moneys previously deposited, nor does it create a lien on the fund, for there is no special fund out of which the check can be paid, nor does it transfer any money to the credit of the holder; it is simply an order which may be countermanded and payment forbidden by the drawer any time before it is actually cashed or accepted."

In determining the first question stated above, we must seek the intention of the parties as expressed in the writing. As appears in the stipulation for the reservation, it was the bank which furnished the request to the plaintiff for his signature. The document be-

gins with an unqualified request to the bank to stop payment on the check. The first two sentences of the following stipulations are expressed in definite terms of contractual obligations. The third sentence is to the effect that the bank receives the request "upon the express condition" that it will not be liable for its acts should the check be paid; but the bank, in duty bound to accept a stop order, was in no position suo motu to impose conditions upon its receipt; they could become effective only by the consent of the drawer; and necessarily the imposition of such a condition would also be a matter of contract. Had it been the intent of the plaintiff to make a conditional request, and of the defendant to receive such a request, it surely would have been phrased in different language. Indeed, to qualify the request by a condition that no liability would attach to the bank if it was not honored would reduce it to hardly more than the statement of a mere wish or hope; and certainly the intention expressed in it went further than that. We do not see how the request can be otherwise construed than as a positive request to stop payment on the check, with an attempt by the bank to annex to that request a release by the plaintiff of certain contractual obligations which the bank owed to him.

That brings us to the question whether the stipulations waiving liability were supported by any consideration. It was a part of the original contractual relation between the parties arising out of the keeping of the account in the bank that it would obey any stop orders on checks under penalty of damages should it fail in its duty in that regard. The stipulations in the request, if effective, would amount to a change in the contractual relationship between the parties by virtue of which the plaintiff surrendered certain rights. They would be unenforceable unless supported by a

proper consideration. *Novak* v. *Kurcon,* 85 Conn. 534, 535, 84 A. 88; *Carrano* v. *Shoor,* 118 Conn. 86, 100, 171 A. 17. In the briefs of counsel it is pointed out that the bank had the right at any time to refuse to deal further with the plaintiff, and the fact that it continued his account is claimed to be a sufficient consideration for the waiver he signed. Had the bank, when he expressed his desire to stop the check, stated to him that, unless he agreed to the stipulations, it would close out his account, we would have a very different situation; but there is no allegation that it did so. So far as appears he was not induced to sign the stipulations by any statements it made, and the mere fact that the relationship between him and it continued would be no consideration for his waiver. *Papallo* v. *Meriden Savings Bank,* 128 Conn. 563, 565, 24 A. 2d 472; *Linvitz* v. *Galeckis,* 110 Conn. 174, 177, 147 A. 592. "Consideration must actually be bargained for as the exchange for the promise." Restatement, 1 Contracts, p. 81; see 1 Page, Contracts (2d Ed.) § 522. The stipulations contained no promise by the bank for the benefit of the plaintiff, nor would they result in any detriment to it. As stated in *Speroff* v. *First Central Trust Co.,* 149 Ohio St. 415, 420, 79 N. E. 2d 119, the plaintiff thereby received no benefit but suffered a detriment and the defendant suffered no detriment but received a benefit. There was no consideration for the release of the right of the plaintiff to recover damages if the defendant unjustifiably failed to obey the request, and the stipulations in it were ineffective to bar that right.

It is not necessary to consider whether, if supported by a consideration, the stipulations would be unenforceable as against public policy.

The sole interrogatory in the reservation is couched in general terms and is not confined to the issue pre-

sented in this particular case. It is a sufficient answer to it to state that the stipulations in the request to stop payment involved in this case are without consideration and are ineffective to bar a right of the plaintiff to recover damages for the failure of the defendant to honor the request.

Costs will be taxed in this court as though the plaintiff had prevailed upon an appeal.

In this opinion the other judges concurred except DICKENSON, J., who concurred in the result.