In the Matter of **MIDDLETOWN PACK-
ING COMPANY, Incorporated.**

No. H 1105.

United States District Court
D. Connecticut.

Dec. 1, 1961.

Sachs, Sachs, Giaimo & Sachs, by Allen H. Duffy, New Haven, Conn., for petitioner.

Widett & Kruger, by Irving Widett, Boston, Mass., for trustee.

BLUMENFELD, District Judge.

This case comes before the court on a petition for review of an order of the referee in bankruptcy to turn over to its trustee the sum of $14,246.10, the balance remaining in the debtor's commercial checking account with The Community Bank & Trust Company [the bank] when the debtor was adjudicated a bankrupt.

The bank asserted that the court of bankruptcy had no jurisdiction over the fund in controversy averring that "the property * * * was * * * in its possession by virtue of claims adverse to Petitioner" [Trustee]; and that "these claims arise out of certain actions of Bankrupt which have caused Respondent to become exposed to claims for damages by Moog & Greenwald as set forth in the letter attached hereto and marked Exhibit 'A'. Respondent's possible liability to Moog & Greenwald for the alleged damages gives Respondent by way of set-off, or otherwise, substantial claims against Bankrupt."

The referee in bankruptcy held a hearing upon the question of his jurisdiction as well as upon the trustee's petition for the turnover order. That was proper practice and counsel for the bank appeared specially and throughout the hearing preserved objection to the exercise of summary jurisdiction by the referee.

The applicable principles of law are well established, as stated by the Supreme Court in Cline v. Kaplan, 323 U.S. 97, 98, 99, 65 S.Ct. 155, 156, 89 L. Ed. 97 (1944):

"A bankruptcy court has the power to adjudicate summarily rights and claims to property which is in the actual or constructive possession of the court. Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 481, 60 S.Ct. 628, 629, 84 L.Ed. 876. If the property is not in the court's possession and a third person asserts a *bona fide* claim adverse to the receiver or trustee in bankruptcy, he has the right to have the merits of his claim adjudicated 'in suits of the ordinary character, with the rights and remedies incident thereto.' Galbraith v. Vallely, 256 U.S. 46, 50, 41 S.Ct. 415, 416, 65 L.Ed. 823; Taubel-Scott-Kitzmiller Co. v. Fox, 264 U.S. 426, 44 S.Ct. 396, 68 L.Ed. 770. But the mere assertion of an adverse claim does not oust a court of bankruptcy of its jurisdiction. Harrison v. Chamberlin, 271 U.S. 191, 194, 46 S.Ct. 467, 468, 70 L.Ed. 897. It has both the power and the duty to examine a claim adverse to the bankrupt estate to the extent of ascertaining whether the claim is in-

genuous and substantial. Louisville Trust Co. v. Comingor, 184 U.S. 18, 25, 26, 22 S.Ct. 293, 296, 46 L. Ed. 413."

The rules by which a referee shall be guided in applying these principles are set forth in In re Meiselman (2 Cir. 1939), 105 F.2d 995, where the court stated at p. 998:

"A claimant cannot avoid a summary order by the very audacity of his claims of either fact or law. The referee must proceed to determine whether the adverse claim is 'plainly without color of merit and a mere pretense' on a proper weighing of the testimony considered in the light of the claimant's self-interest and a due consideration of existing law."

██ After receiving evidence, the referee found the following facts: The bankrupt prior to the adjudication of bankruptcy in involuntary proceedings instituted on August 30, 1958 was engaged in the business of purchasing, slaughtering and selling live stock. On July 30, 1958, one of its suppliers, Moog & Greenwald [M & G] of Chicago, Illinois, shipped two carloads of live cattle to the bankrupt, which were received and unloaded on August 2, 1958. On August 4, 1958, the bank received a sight draft drawn by M & G on the bankrupt relating to the shipments in question in the amount of $14,246.10. Accompanying this draft was a straight bill of lading and a letter of instruction from the shipper's transmitting bank, Drovers National Bank of Chicago [Drovers] to wire nonpayment. On August 4, 1958, there were insufficient collected funds on deposit to pay the draft which condition continued until August 7, 1958. On August 6, 1958, the bank notified Drovers that the draft had not yet been paid because it was against uncollected funds, which were expected to be collected by August 7, 1958. On August 7, 1958, the bankrupt, having previously authorized the bank to honor the draft, notified the bank to stop all payments of checks and drafts against its

account; and, on the same day, the bank notified Drovers that the funds were still uncollected. On August 8, 1958, the bank telegraphed Drovers advising of the receipt of the stop payment order. On August 22, 1958, the bank received a letter from the attorneys for M & G as follows:

"Wiggin & Dana
205 Church St., New Haven, Conn.
August 21, 1958
Registered Mail

Community Bank & Trust Company
692 Chapel Street
New Haven, Connecticut
Gentlemen:

We represent Moog & Greenwald, a Chicago, Illinois partnership whose sight draft signed by one of the partners, Segel Hess, for $14,246.10 drawn on the Middletown Packing Company, Inc., of Middletown, Connecticut, was forwarded to your bank for collection on July 31, 1958. It is our understanding that your bank is holding sufficient funds of the Middletown Packing Company to pay the draft. This is to put you on notice that our clients claim that amount as theirs on the grounds that it is consideration for cattle sold and delivered to the Middletown Packing Company, and of the sale of such cattle by the Middletown Packing Company.

We would also like to advise you of our opinion that because of your bank's failure to advise promptly our clients of the Middletown Packing Company's inability or unwillingness to pay the above mentioned draft, our clients may suffer great financial losses and that our clients hold you responsible for any and all losses they might so suffer.

Very truly yours,
s/ Wiggin & Dana

IH/g
cc: Robert N. Giaimo, Esq.
185 Church Street
New Haven, Connecticut"

On March 7, 1959, M & G filed an unsecured claim in the amount of $14,246.-10.

The respondent's petition is grounded on "claims adverse to Petitioner"[1] which raise questions of law, since facts are not in dispute here. Respondent's own characterization is, "These claims arise out of certain actions of Bankrupt which have caused Respondent to become exposed to claims for damages by Moog & Greenwald as set forth in the letter attached hereto." [Quoted above.] The claim set forth in the last paragraph of the letter from M & G's attorneys is considered first. Whether this claim is a mere pretense or colorable and not substantial requires an examination of the basis for it which must be found upon the facts disclosed by the record.

M & G's claim that the bank was negligent is a claim against the bank, not a claim against the property of the debtor. In the collection of the sight draft, the bank was acting as agent of M & G and not of the debtor. Klein v. Munson, 111 Conn. 709, 151 A. 177. There is no basis for arguing that because the bank may ultimately be held liable to M & G for its own negligence in failing to properly comply with the instructions of Drovers to wire nonpayment of the sight draft it is, therefore, entitled to treat the property of the bankrupt in its possession as an indemnity bond against liability for its own negligent conduct. The respondent cites no authority in support of this ingenious contention. The referee properly concluded:

"(C) Conclusion of Law. (2) the claim of Community Bank and Trust Company based upon a possible liability in negligence to Moog & Greenwald is colorable and is not sufficient to support the bank's assertion of an adverse claim suffi-

---

[1]. Neither before the referee nor here have the parties raised any question about whether the rights of the debtor to the particular bank deposit involved in this case constituted property having sufficient possessory characteristics upon which to base the power of a court of bankruptcy to exercise summary jurisdiction over it. The petitioner's brief did cite In re Fuller (2 Cir. 1923), 294 F. 71 and quoted from dictum on p. 73, " * * * banks holding deposits are debtors, and ordinarily are adverse claimants, not subject to summary jurisdiction." It did so only in reference to the question of adversity of the claim. In In re Fuller, the court limited its inquiry to review of the bank's asserted adverse claim and gave no consideration to the possibility that the deposit might not in itself be subject to a turn-over order by reason of its being the property of the bank, stating that, "The receiver is entitled to the custody of the fund, where it plainly appears that there is no outstanding claim thereto with color of title." at p. 73. Despite dictum contra in In re Roman (2 Cir. 1928), 23 F.2d 556, 558 (a case not involving a bank deposit), no case in the Second Circuit has denied summary jurisdiction solely because the bank deposit was not property of the bankrupt. See In re Eakin (2 Cir. 1946), 154 F.2d 717 (wherein the court recognized this problem, but went on to review the adverse claim asserted by the bank).

The petitioner's brief repeatedly refers to the deposit as "this money", the "Money held by them", and it contends in its brief " * * * it is holding said money adversely to the jurisdiction of the bankruptcy court." Whether it holds money of the debtor or is indebted to it in the same sum, the bank does not deny either. Since the parties treat the deposit as money of the debtor in the possession of the bank and raise only the question of whether there is an adverse claim of sufficient substance to defeat the court's right to exercise summary jurisdiction over this controversy between the bank and the trustee, this court is warranted in so treating it. See In re Radley Steel Const. Co. (D.C.N.Y.1914), 212 F. 462. The decisions in several circuits reviewing turnover orders against banks have directed their attention solely to the question of whether the bank has asserted an adequate adverse claim. In re Gill (8 Cir. 1911), 190 F. 726; First National Bank of Thomasville, Ga. v. Hopkins (5 Cir. 1912), 199 F. 873; Shortridge v. Utah Savings & Trust Co. (10 Cir. 1930), 40 F.2d 328; In re Industrial Associates, Inc. (D.C.E.D.Pa. 1957), 155 F.Supp. 866; Contra: In re Italian Cook Oil Corp. (D.C.N.J.1950), 91 F.Supp. 72; But see: In re Radley Steel Const. Co., supra; Twentieth Street Bank v. Gilmore (4 Cir. 1934), 71 F.2d 594; Lamb v. Townshend (4 Cir. 1935), 71 F.2d 590 (cases recognizing but rejecting the distinction later made in In re Italian Cook Oil Corp. supra).

cient to defeat the summary jurisdiction of the court."

■■ Whether the remainder of the letter sets forth any claim of the bank adverse to the petitioner is considered next. Nowhere does it appear that the bank asserts for itself any claim of adverse title to the funds on deposit. It does contend, however, that M & G has made a claim to possession of the fund adverse to the trustee. Any basis for such a contention could be found only by reading into the letter received from M & G's attorneys something that is not there. The letter of August 21, 1958 which claims that the "bank is holding sufficient *funds of the Middletown Packing Company* to pay the draft" refutes that contention on its face. On August 7, 1958, two weeks before this letter was received, the debtor had notified the bank to stop payment of the M & G draft. That notice effectively terminated the bank's right to pay that draft out of the debtor's funds. Calamita v. The Tradesmens National Bank, 135 Conn. 326, 64 A.2d 46 (1949). The debtor's authorization to the bank prior to August 7, 1958 to pay the draft did not operate as an assignment of any part of the debtor's account. As held in Calamita, supra, at p. 330, 64 A.2d at p. 48, quoting from Cincinnati, H. & D. R. Co. v. Metropolitan National Bank, 54 Ohio St. 60, 71, 42 N.E. 700, 31 L.R.A. 653:

"The bank's agreement with the depositor involves or implies no agreement with the holder of a check. The giving of a check is not an assignment of so much of the creditor's claim. It passes no title, legal or equitable, to the holder in the moneys previously deposited; nor does it create a lien on the fund, for there is no special fund out of which the check can be paid, nor does it transfer any money to the credit of the holder. It is simply an order which may be countermanded and payment forbidden by the drawer any time before it is actually cashed or accepted."

The next sentence of the letter which claims "that amount [$14,246.10] as theirs [M & G's] on the ground that it is consideration for cattle sold and delivered to Middletown Packing Company" is read by the court to assert no more than that M & G had completed their part of the transaction for the sale of the cattle at the agreed price of $14,246.10. This would not sustain an argument that M & G had any right to possession of deposits then in the account of the debtor. There is no hint of a claim that M & G had disaffirmed that sale and were seeking restitution of the cattle or the proceeds of their resale.

■ That M & G never made any claim of a right to possession of the bank deposit of the bankrupt gains added confirmation from their act in filing an unsecured claim in the bankruptcy proceedings for the amount of $14,246.10. By presenting their claim for examination and allowance they consented to the adjudication by the bankruptcy court of not only the merits of the claim, but also of any controversy relative to a lien upon or other claim against the bank deposit as such. Alexander v. Hillman, 296 U.S. 222, 56 S.Ct. 204, 80 L.Ed. 192 (1935); Chase National Bank of City of New York v. Lyford (2 Cir. 1945), 147 F.2d 273, 277; In re Carl Dernburg & Son (2 Cir. 1924), 5 F.2d 37. Under these circumstances, the bank no longer had any claim of M & G to rely upon even if it might have asserted the claim of M & G at the inception of the bankruptcy proceedings. The desirability of having claims expeditiously adjudicated in the courts of bankruptcy in summary proceedings to avoid delay and expense underlies the rule that one having no adverse claim of his own may not assert the adverse claim of another to defeat the summary jurisdiction of the bankruptcy court. In re Goldman (D.C.N.Y.1933), 5 F.Supp. 973, 24 Am.Bankr.Rep.,N.S., 67; In re Jaybar Realty Corp. (D.C.N.Y.1942), 43 F. Supp. 39, aff'd sub nom. Lahey v. Trachman (2 Cir.1942), 130 F.2d 748. Jurisdiction of the bankruptcy court over the

claim of M & G against the bankrupt having attached when M & G filed their claim, the bank cannot thereafter collaterally attack the jurisdiction of the bankruptcy court. Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938); Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 377, 60 S.Ct. 317, 84 L.Ed. 329 (1939).

 Before considering the question of whether the referee's order should have required the payment of interest by the respondent it is first necessary to consider whether that question is properly before the court.

The respondent challenges the power of this court to consider the trustee's request that the referee's order should be amended to require the bank to pay interest on the money withheld. It relies upon two grounds—first, the trustee's cross-petition was not timely filed; and second, the question was not raised before the referee. As to the first ground, if the trustee was required to bring a cross-petition it is clear that he did not do so within ten days after the entry of the order or within an extended time allowed "upon petition filed within such ten-day period * * *." Section 39, sub. c of the Bankruptcy Act (11 U.S.C.A. § 67, sub. c.) was amended by Public Law 86-662 approved July 14, 1960 by adding the following italicized words:

"A person aggrieved by an order of a referee may, within ten days after the entry thereof or within such extended time as the court *upon petition filed within such ten-day period* may for cause shown allow * * *. *Unless the person aggrieved shall petition for review of such order within such ten-day period, or any extension thereof, the order of the referee shall become final.*"

After a clear and comprehensive analysis of the legislative background (which included a recommendation for the adoption of the amendment from the Administrative Office of the United States Courts), Judge Michie in In re Watkins (D.C.W.D.Va.1961), 197 F.Supp. 500, interpreted the word "final" in the amendment to mean final and accordingly held there that all discretionary power to grant an extension of time in which to petition for review terminated after ten days from the order of a referee.

The trustee nonetheless contends that since he was the successful party before the referee, it was not necessary for him to cross-petition for review in order to have the court consider the pertinent question of interest, citing In re Michael's Cafeteria, Inc. (D.C.La.1943), 52 F.Supp. 799, 800. Although a reading of that case leaves no doubt that a party " * * * having won its case, was not required to seek what might be called for lack of a better term, a 'cross review' in order to have considered questions of law, which were either raised before the Referee or were pertinent on the record as it stood" it is not altogether clear that the court's judgment operated to give further affirmative relief to the creditor who had won his case below. For this court to interpret the decision in Michael's as extending that far would be to read it as trespassing the inherent limitation in the established rule that although an appellee may urge arguments contradictory to the reasoning of the court below, rules of law not there considered or facts in the record which the court overlooked, to support the decree he cannot attack the decree to enlarge his own rights under it in the absence of a cross-appeal. Morley Construction Co. et al. v. Maryland Casualty Co., 300 U.S. 185, 191, 192, 57 S.Ct. 325, 81 L.Ed. 593; LeTulle v. Scofield, 308 U.S. 415, 421, 422, 60 S.Ct. 313, 84 L.Ed. 355 (1939); Helvering v. Pfeiffer, 302 U.S. 247, 250, 251, 58 S.Ct. 159, 82 L.Ed. 231 (1937). In United States v. Bentley (2 Cir.1939), 107 F.2d 382, the limitation of the rule was enforced to deny an appellee's claim for a larger award of interest than the judge below awarded and the limitation is upheld in like manner here.

For the foregoing reasons the order of the referee is confirmed.