ANDREW J. MANDELL *v.* GENE GAVIN,
COMMISSIONER OF REVENUE
SERVICES
(SC 16672)

Sullivan, C. J., and Borden, Norcott, Zarella and Mulcahy, Js.

*(Two justices concurring separately in one opinion)*

Argued September 25, 2002—officially released March 18, 2003

*Jonathon L. Ensign,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Edward F. Reynolds, Jr.,* assistant attorney general, for the appellant (defendant).

*Kenneth Rosenthal,* with whom, on the brief, was *Samuel M. Hurwitz,* for the appellee (plaintiff).

*Opinion*

BORDEN, J. The dispositive issue in this appeal[1] is whether the sole owner of a limited liability company who transferred real property to that company as an asset contribution is subject to the real estate convey-

---

[1] The defendant appealed to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

ance tax imposed by General Statutes § 12-494 (a).[2] The defendant, Gene Gavin, the commissioner of revenue services, appeals from the summary judgment rendered by the trial court, which determined that the plaintiff, Andrew J. Mandell, did not owe a conveyance tax for transferring certain real property to his limited liability company, Mandell Properties, LLC (company). The plaintiff had appealed to the trial court from the decision of the defendant, who imposed the conveyance

[2] General Statutes § 12-494 provides: "(a) There is imposed a tax on each deed, instrument or writing, whereby any lands, tenements or other realty is granted, assigned, transferred or otherwise conveyed to, or vested in, the purchaser, or any other person by his direction, when the consideration for the interest or property conveyed equals or exceeds two thousand dollars, (1) subject to the provisions of subsection (b) of this section, at the rate of five-tenths of one per cent of the consideration for the interest in real property conveyed by such deed, instrument or writing, the revenue from which shall be remitted by the town clerk of the municipality in which such tax is paid, not later than ten days following receipt thereof, to the Commissioner of Revenue Services for deposit to the credit of the state General Fund and (2) at the rate of eleven one-hundredths of one per cent of the consideration for the interest in real property conveyed by such deed, instrument or writing, which amount shall become part of the general revenue of the municipality in accordance with section 12-499.

"(b) The rate of tax imposed under subdivision (1) of subsection (a) of this section shall, in lieu of the rate under said subdivision (1), be imposed on certain conveyances as follows: (1) In the case of any conveyance of real property which at the time of such conveyance is used for any purpose other than residential use, except unimproved land, the tax under said subdivision (1) shall be imposed at the rate of one per cent of the consideration for the interest in real property conveyed; and (2) in the case of any conveyance in which the real property conveyed is a residential estate, including a primary dwelling and any auxiliary housing or structures, for which the consideration in such conveyance is eight hundred thousand dollars or more, the tax under said subdivision (1) shall be imposed (A) at the rate of one-half of one per cent on that portion of such consideration up to and including the amount of eight hundred thousand dollars and (B) at the rate of one per cent on that portion of such consideration in excess of eight hundred thousand dollars; and (3) in the case of any conveyance in which real property on which mortgage payments have been delinquent for not less than six months is conveyed to a financial institution or its subsidiary which holds such a delinquent mortgage on such property, the tax under said subdivision (1) shall be imposed at the rate of one-half of one per cent of the consideration for the interest in real property conveyed."

tax on the transfer following a hearing in which the plaintiff contested the tax assessment. The trial court concluded, based upon the reasoning that the plaintiff and the company were one entity for tax purposes, that the transfer was not subject to the real estate conveyance tax because the plaintiff did not receive any "consideration" in exchange for the real property, which is a requirement for the imposition of the tax under § 12-494 (a). On appeal, the defendant claims that the increase in fair market value of the company after receiving the real property constitutes "consideration" within the meaning of § 12-494 (a).[3] We disagree and, accordingly, we affirm the judgment in favor of the plaintiff, albeit on reasoning different from that employed by the trial court.

The parties presented the following undisputed facts to the trial court on cross motions for summary judgment. For several years prior to 1997, the plaintiff owned and operated commercial real property in Newington in his individual capacity. At that time, chapter 613 of our General Statutes required a minimum of two members to form a limited liability company. See General Statutes (Rev. to 1995) § 34-101 (a). The legislature amended chapter 613 in 1997 in order to permit

---

[3] The plaintiff's primary argument on appeal was that, under General Statutes § 34-113, his single-member limited liability company was not a separate entity from himself for tax purposes and that, therefore, a transfer of real property from himself to his company was not a taxable event. Because we conclude that the transfer was not taxable under § 12-494 (a) due to the absence of consideration, we need not address this argument. We also note that, subsequent to oral argument before this court, we requested the parties to file supplemental briefs on the following questions: "What is the meaning of the term 'consideration' as used in [Public Acts 1967, No. 693, §§ 1 and 5], now codified as General Statutes §§ 12-494 (a) and 12-498 (a), and of the term 'consideration for' as used in [Public Acts 1971, No. 158, § 2], now codified as General Statutes § 12-494 (a)? In this connection, address the extent, if any, to which the terms were intended to incorporate any authorities under the previously existing federal conveyance tax statute." The parties complied with our request.

the formation of limited liability companies with only one member. See Public Acts 1997, No. 97-70. The plaintiff formed his company soon after the effective date of this legislation, naming himself the sole member. The plaintiff then transferred the real property to his company by quitclaim deed. In the deed, the plaintiff recited that the transfer was "for NO CONSIDERATION . . . ."

The defendant determined that the plaintiff's real estate transfer was subject to the real estate conveyance tax of § 12-494 (a), and billed the plaintiff in the amount of $56,200 for tax, plus interest and penalties. In arriving at this figure, the defendant had applied a taxation rate of 1 percent, from § 12-494 (b); see footnote 2 of this opinion; to the *fair market value* of the property at the time of the transfer, which was $5,620,000. Section 12-494 (b) (1) imposes a taxation rate of "one per cent of the *consideration for* the interest in real property conveyed" for "real property which at the time of such conveyance is used for any purpose other than residential use, except unimproved land . . . ." (Emphasis added.) The plaintiff applied to the defendant for a hearing to dispute the tax pursuant to General Statutes §§ 12-502a and 12-553.[4]

---

[4] General Statutes § 12-502a incorporates the appellate procedures described in "sections 12-548 to 12-554," making them applicable to appeals from real estate conveyance taxation.

General Statutes § 12-553 provides: "Any taxpayer, aggrieved by the action of the commissioner [of revenue services] or his authorized agent in fixing the amount of any tax, penalty or interest provided for by this chapter, may apply to the commissioner, in writing, within sixty days after notice of such action is delivered or mailed to him, for a hearing and a correction of the amount of the tax, penalty or interest so fixed, setting forth the reasons why such hearing should be granted and the amount of the tax, penalty or interest [that] should be reduced. The commissioner shall promptly consider each such application and may grant or deny the hearing requested. If the hearing is denied, the applicant shall be notified thereof forthwith. If it is granted, the commissioner shall notify the applicant of the time and place fixed for such hearing. After such hearing the commissioner may make such order in the premises as appears to him just and lawful and shall furnish a copy of such order to the applicant. The commissioner may, by notice in

In his hearing before the defendant, the plaintiff argued that the transfer of real property from himself to the company was not a taxable event under § 12-494 (a). Specifically, he argued that, under General Statutes § 34-113,[5] he and his single-member limited liability company should be considered a single entity for taxation purposes, and that any transfer of property between them would fail to satisfy the requirement of § 12-494 (a) that transfers be for "consideration" to be taxable.[6] The plaintiff contended that "there can be no . . . consideration" for the transfer in question because he, as an "individual, owns the real estate both before and after the purported transfer . . . ." The plaintiff relied on a decision of the Superior Court for the general

writing, at any time within three years after the date when any return of any taxpayer has been due, order a hearing on his own initiative and require the taxpayer or any other individual whom he believes to be in possession of relevant information concerning the taxpayer to appear before him or his authorized agent with any specified books of account, papers or other documents, for examination under oath."

[5] General Statutes § 34-113 provides in relevant part: "A limited liability company formed under sections 34-100 to 34-242, inclusive . . . shall be treated, for purposes of taxes imposed by the laws of the state or any political subdivision thereof, in accordance with the classification for federal tax purposes."

[6] The plaintiff argued that he and his single-member limited liability company should be treated as a single entity for Connecticut taxation purposes because, under § 34-113, "[a] limited liability . . . shall be treated . . . in accordance with the classification for federal tax purposes," and under federal law, the company was not a separate entity from himself. The Code of Federal Regulations provides that, generally, a noncorporate business entity "with a single owner can elect to be . . . disregarded as an entity separate from its owner . . . ." 26 C.F.R. § 301.7701-3 (b). In the trial court, the plaintiff submitted his personal federal tax return from 1997, which demonstrated that he had elected to report the income from the real property as his personal income after he transferred it to the company. Thus, he argued that he had elected to disregard his single-member limited liability company as an entity separate from himself under both federal and Connecticut law. Under the analysis set forth in this opinion, we need not address the merits of this specific argument because, even if the company were treated as a separate entity from the plaintiff, the transfer of real property at issue was not made for "consideration" within the meaning of § 12-494 (a).

principle that "the exchange of consideration is the touchstone for determining which transactions are subject to Connecticut's real estate conveyance tax . . . ." (Internal quotation marks omitted.) *Bjurback* v. *Commissioner of Revenue Services*, 44 Conn. Sup. 354, 358, 690 A.2d 902 (1996).

The defendant rejected the plaintiff's interpretation, determining that the "assessment is proper and legal." The defendant acknowledged that § 12-494 (a) imposes a tax only for real estate transfers made in exchange for "consideration," but reasoned that the plaintiff "received consideration in the form of an interest in [the company]." On the basis of an assessment by the defendant's auditor that the plaintiff's 100 percent interest in the company had increased by the fair market value of the property transferred, which was $5,620,000, the defendant imposed the tax of $56,200 and $25,290 in interest and penalties. The plaintiff appealed from the defendant's decision to the trial court pursuant to General Statutes §§ 12-502a and 12-554.[7]

[7] Section 12-502a incorporates the appellate procedures described in "sections 12-548 to 12-554," making them applicable to appeals from real estate conveyance taxation.

General Statutes § 12-554 provides: "Any taxpayer aggrieved because of any order, decision, determination or disallowance of the Commissioner of Revenue Services under the provisions of this chapter may, within one month after service upon the taxpayer of notice of such order, decision, determination or disallowance, take an appeal therefrom to the superior court for the judicial district of New Britain, which shall be accompanied by a citation to the Commissioner of Revenue Services to appear before said court. Such citation shall be signed by the same authority, and such appeal shall be returnable at the same time and served and returned in the same manner, as is required in case of summons in a civil action. The authority issuing the citation shall take from the appellant a bond or recognizance to the state of Connecticut, with surety to prosecute the appeal to effect and to comply with the orders and decrees of the court in the premises. Such appeals shall be preferred cases to be heard, unless cause appears to the contrary, at the first session by the court or by a committee appointed by it. Said court may grant such relief as may be equitable and, if such tax has been paid prior to the granting of such relief, may order the Treasurer to pay the amount of such relief, with interest at the rate of two-thirds of one per cent per month or fraction thereof, to the aggrieved taxpayer. If

Before the trial court, the parties submitted cross motions for summary judgment. The court granted the plaintiff's motion and denied the defendant's motion, determining that the plaintiff was not subject to the real estate conveyance tax because the plaintiff did not receive any "consideration" in exchange for the real property, which is required for the imposition of that tax under § 12-494 (a). Specifically, the court determined that the company must be "disregarded" as an entity separate from the plaintiff, its sole owner, for tax purposes and, therefore, any transfer between the plaintiff and the company could not have been for consideration. This appeal followed.

On appeal, the defendant claims that the trial court improperly determined that the plaintiff was not subject to the real estate conveyance tax. Specifically, the defendant argues that the increase in the fair market value of the company as a result of the real estate transfer constituted "consideration" within the meaning of § 12-494 (a) and that, therefore, the trial court improperly determined that the consideration requirement for the imposition of the tax had not been satisfied. We disagree.

The defendant's claim on appeal involves statutory interpretation, namely, the construction of § 12-494 (a). "The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circum-

the appeal has been taken without probable cause, the court may tax double or triple costs, as the case demands; and, upon all such appeals which may be denied, costs may be taxed against the appellant at the discretion of the court, but no costs shall be taxed against the state."

stances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Thus, this process requires us to consider all relevant sources of the meaning of the language at issue, without having to cross any threshold or thresholds of ambiguity. Thus, we do not follow the plain meaning rule.

"In performing this task, we begin with a searching examination of the language of the statute, because that is the most important factor to be considered. In doing so, we attempt to determine its range of plausible meanings and, if possible, narrow that range to those that appear most plausible. We do not, however, end with the language. We recognize, further, that the purpose or purposes of the legislation, and the context of the language, broadly understood, are directly relevant to the meaning of the language of the statute.

"This does not mean, however, that we will not, in a given case, follow what may be regarded as the plain meaning of the language, namely, the meaning that, when the language is considered without reference to any extratextual sources of its meaning, appears to be *the* meaning and that appears to preclude any other likely meaning. In such a case, the more strongly the bare text supports such a meaning, the more persuasive the extratextual sources of meaning will have to be in order to yield a different meaning." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Courchesne*, 262 Conn. 537, 577–78, 816 A.2d 562 (2003).

We begin with the language at issue in § 12-494 (a). Section 12-494 (a) imposes a real estate conveyance tax "on each deed . . . whereby any lands, tenements or other realty is . . . transferred . . . to . . . [a] purchaser, or any other person by his direction, when

*the consideration for* the interest or property conveyed equals or exceeds two thousand dollars . . . ." (Emphasis added.) It is undisputed that this language requires that there be "consideration for" the transfer of real property before imposing the real estate convey- ance tax. We turn, therefore, to the significance of the term "consideration," as it is used in § 12-494 (a).

The term "consideration" has been used in a specific, legal sense for centuries. See, e.g., *Cook* v. *Bradley*, 7 Conn. 57, 61–62 (1828); see generally 3 S. Williston, Contracts (4th Ed. 1992) § 7:1, pp. 7–8 ("[t]he history of the requirement of consideration is bound up with the history of the common-law action of assumpsit"). "[L]egal terms . . . absent any legislative intent shown to the contrary, are to be presumed to be used in their legal sense. . . . [T]he law uses familiar legal expres- sions in their familiar legal sense. . . . *Peck* v. *Jacque- min*, 196 Conn. 53, 70–71, 491 A.2d 1043 (1985) . . . ." (Citations omitted; internal quotation marks omitted.) *Perkins* v. *Freedom of Information Commission*, 228 Conn. 158, 169–70, 635 A.2d 783 (1993); see also General Statutes § 1-1 (a) ("technical words and phrases, and such as have acquired a peculiar and appropriate mean- ing in the law, shall be construed and understood accordingly"). Section 71 of the Restatement (Second) of Contracts relates the familiar legal sense of the term "consideration": "(1) To constitute consideration, a per- formance or a return promise must be bargained for. (2) A performance or return promise is bargained for if it is sought by the promisor in exchange for his prom- ise and is given by the promisee in exchange for that promise." 1 Restatement (Second), Contracts § 71, p. 172 (1981); see also *Calamita* v. *Tradesmens National Bank*, 135 Conn. 326, 332, 64 A.2d 46 (1949) (" '[c]onsid- eration must actually be bargained for as the exchange for the promise' "); accord *State* v. *Sostre*, 261 Conn. 111, 123, 802 A.2d 754 (2002) (" '[t]o constitute consider-

ation, a performance or a return promise must be bargained for' ''). The Restatement (Second) of Contracts further defines the term " '[b]argained for' " as follows: "In the typical bargain, the consideration and the promise bear a reciprocal relation of motive or inducement: the consideration induces the making of the promise and the promise induces the furnishing of the consideration. Here, as in the matter of mutual assent, the law is concerned with the external manifestation rather than the undisclosed mental state . . . . [I]t is not enough that the promise induces the conduct of the promisee or that the conduct of the promisee induces the making of the promise; both elements must be present, or there is no bargain." (Citation omitted.) 1 Restatement (Second), supra, § 71, p. 173, comment (b). Nothing in the legislative history of § 12-494 (a), or any other extratextual source, indicates that another sense of the term "consideration" was intended.

In the present case, there was no consideration for the plaintiff's transfer of real property to the company because there was no bargained for exchange. The plaintiff simply transferred the real property at issue to his company. The plaintiff did not promise to transfer the real property to his company in exchange for any performance or return promise by the company. In fact, neither the plaintiff nor the company made any promises or exchanges regarding the transfer whatsoever. In other words, the plaintiff acted unilaterally, not in a bargained for exchange, when he transferred the real property to his company. Therefore, § 12-494 (a) did not impose a conveyance tax on the transfer, because there was no "consideration for" the transfer.

The defendant argues that the increase in the fair market value of the company resulting from the transfer of real property to it constituted consideration. As discussed previously, the change in fair market value of the company was not the result of a bargained for exchange.

The change in fair market value was the automatic effect of the transfer; the company served as a passive recipient of the property. Thus, the plaintiff did not induce any conduct on the part of the company, and that element must be present, or there is no bargain. Id.

Furthermore, the legislative genealogy and history of § 12-494 (a) indicates that the legislature intended to avoid the meaning proposed by the defendant, namely, that "consideration" be measured by the fair market value of the real property conveyed, irrespective of whether there is any bargained for exchange in the transaction. Prior to 1971, General Statutes (Sup. 1969) § 12-494,[8] the predecessor statute of § 12-494 (a), imposed the real estate conveyance tax even in the absence of consideration if the *"value of the interest or property conveyed* exceed[ed] [the statutory amount] . . . ." (Emphasis added.) In 1971, the legislature amended § 12-494 to impose the tax only where there is "consideration for" the transfer of real estate, thus eliminating the alternative of taxing the value of the property conveyed in the absence of consideration. See General Statutes (Rev. to 1971) § 12-494. An examination of the floor debate in 1971 reveals that the legislators considered a system of taxation for transfers in the absence of consideration, based on the fair market value of the property conveyed, to be fundamentally unfair. In those proceedings, Senator Edward S. Rimer stated: "[T]his amendment . . . changes the system of taxation on the Real Estate conveyance tax so that it would be based now on actual consideration or sale

---

[8] General Statutes (Sup. 1969) § 12-494 provided: "There is imposed a tax on each deed, instrument or writing whereby any lands, tenements or other realty is granted, assigned, transferred or otherwise conveyed to, or vested in, the purchaser, or any other person by his direction, when the consideration or value of the interest or property conveyed exceeds one hundred dollars and does not exceed five hundred dollars, in the amount of fifty-five cents; and at the rate of fifty-five cents for each additional five hundred dollars or fractional part thereof."

price of the property involved. Rather than the existing situation where the tax is based upon a fair market value. . . . The Conn[ecticut] Real Estate conveyance tax was adopted simultaneously with the phase out of the federal document[a]ry tax on conveyance of real estate. The federal tax was based upon consideration rather than fair market value and the history was that [it] was a very workable tax program. In my judgment this amendment would make the Connecticut conveyance tax a fairer tax. And a more workable tax and would obviate certain hardship situations that are now in exist[e]nce." 14 S. Proc., Pt. 3, 1971 Sess., pp. 1037–38. Thus, Senator Rimer indicated that deeds granting real estate to a "land conservation trust or . . . to a charitable institution" would no longer be subject to the real estate conveyance tax due to the absence of consideration. Id., p. 1037. Senator Thomas E. Dupont reaffirmed this objective: "I rise in favor of this amendment. I think it goes a step further than the bill as originally in the file. That expanded the exemptions. . . . I think that it makes some sense to limit the tax to those [conveyances] where there is considerations." Id., p. 1038.

The defendant contends that this legislative history indicates that § 12-494 (a) was intended to replace the federal real estate conveyance tax that had been phased out. The defendant argues that transactions such as that at issue in this appeal were considered taxable under federal regulations under the federal conveyance tax and, therefore, that we should adopt the same position with respect to the Connecticut real estate conveyance tax. We are not persuaded. There is nothing in either the language or the legislative history of § 12-494 (a) to indicate that the legislature intended to adopt any such federal regulatory gloss. Indeed, the statutory language and extratextual sources discussed previously run counter to such an interpretation.

The judgment is affirmed.

In this opinion NORCOTT and MULCAHY, Js., concurred.

SULLIVAN, C. J., with whom ZARELLA, J., joins, concurring. I agree with the majority's conclusion that the transfer of real estate at issue in this case was not subject to the real estate conveyance tax imposed by General Statutes § 12-494 (a). I write separately, however, to express my continued disagreement with the method of statutory interpretation adopted by the majority of this court in *State* v. *Courchesne*, 262 Conn. 537, 816 A.2d 562 (2003). In *Courchesne*, the majority abandoned the plain meaning rule that this court has employed for more than a century in favor of a purposive and extratextual approach. See id., 597, 599 (*Zarella J.*, dissenting). As I did when I joined Justice Zarella in his dissenting opinion in *Courchesne*, I continue to oppose that radical change in our jurisprudence.

I also take this opportunity to express my view that the principle of stare decisis does not apply to the approach to statutory interpretation adopted by the majority in *Courchesne*. As Justice Zarella stated in his dissenting opinion in that case, the plain meaning rule is not a rule of substantive law, but one of judicial philosophy. See id., 622. The plain meaning rule embodies the principle that "it is the objective meaning of a statute's text that should govern, rather than the legislature's subjective intent in choosing that text." Id., 626. Undergirding this principle is the judicial philosophy that " 'it is simply incompatible with democratic government, or indeed, even with fair government, to have the meaning of a law determined by what the lawgiver meant, rather than by what the lawgiver promulgated.' " Id., quoting A. Scalia, A Matter of Interpretation: Federal Courts and the Law (A. Gutmann ed., 1997) p. 17. In my view, judicial philosophy is a matter of individual

conscience and is not subject to majority rule by the members of this court.[1]

I recognize that I have, on occasion, relied on extra-textual sources to bolster a statutory interpretation grounded in the plain meaning of the statute under review. See, e.g., *State* v. *Sostre*, 261 Conn. 111, 802 A.2d 754 (2002). It is now clear to me that that practice is both unnecessary and unwarranted, in that it may suggest that, in cases where the plain meaning of the statute and the meaning suggested by the extratextual sources are inconsistent, the extratextual sources could override the text of the statute. This is something that I never have believed. Accordingly, I cannot in good conscience, and will not, employ the extratextual approach adopted by the majority in *Courchesne* when the meaning of a statute is plain on its face.

Even if it is assumed, however, that the principle of stare decisis does apply to the majority's abandonment of the plain meaning rule, a willingness to depart from that principle would be, in my view, particularly appropriate with respect to this issue. See *Conway* v. *Wilton*, 238 Conn. 653, 661, 680 A.2d 242 (1996) ("stare decisis . . . does not have the same kind of force in each kind of case so that adherence to or deviation from that general policy may depend upon the kind of case involved" [internal quotation marks omitted]); id., 685 n.3 (*Peters, C. J.*, dissenting) ("considerations of stare decisis have special force in the area of statutory inter-pretations, for here . . . [the legislature] remains free to alter what we have done" [internal quotation marks omitted]). It is my hope that the majority ultimately will rethink its ill-considered departure from the long-

[1] I do recognize, however, that the substantive legal holdings resulting from the novel judicial philosophy adopted by the majority in *Courchesne* are subject to the principle of stare decisis. Accordingly, I would only reluctantly overrule a substantive legal conclusion based on that judicial philosophy even though I do not feel bound by the philosophy itself.

standing, democratically grounded jurisprudential principles that hitherto have guided this court's interpretation of statutes.

Turning to the issue before us in this case, I believe that the plain meaning of § 12-494 (a) precludes the interpretation urged by the defendant, the commissioner of revenue services. As the majority points out, the term "consideration" has a familiar legal meaning that simply does not encompass an increase in the monetary value of a thing if that increase was not the result of bargain or exchange. Accordingly, I see no need to consult the legislative genealogy and history of § 12-494 (a), as the majority has done. Although I disagree with the majority's interpretive methodology, I concur in the judgment.